[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-12020
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 14, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-02933-CV-CAP-1

SALEEM BASHIR,

Plaintiff-Appellant,

versus

ROCKDALE COUNTY, GEORGIA,
a political subdivision of the State of Georgia,
JEFF WIGINGTON, individually and in his official
capacity as Sheriff of Rockdale County, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(April 14, 2006)**

Before BLACK, HULL and FARRIS[*], Circuit Judges.

BLACK, Circuit Judge:

_____

[*] Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Appellant Saleem Bashir initiated this action pursuant to 42 U.S.C. § 1983 and Georgia law against Rockdale County, Georgia, and members of the Rockdale County Sheriff's Department, alleging Sherrif Deputy Edell Davis and several unnamed Rockdale County Deputies violated the Fourth Amendment and Georgia law when they entered his home without a warrant and arrested him. The district court granted summary judgment in favor of the defendants, concluding, inter alia, the deputies had probable cause to make the arrest, did not employ excessive force, and were entitled to immunity from suit. Bashir appeals from the grant of summary judgment. After oral argument and review of the record, we conclude Deputy Davis and the unnamed deputies are not entitled to qualified immunity for the warrantless arrest of Bashir in his home and reverse the judgment in that respect. We affirm the judgment on Bashir's excessive force and state law tort claims.

## I. BACKGROUND

We view the facts in the light most favorable to Bashir, drawing all reasonable inferences in his favor. *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002). The series of events culminating in Bashir's arrest began October 3, 2001, at around 11:30 p.m., when Rockdale County Sheriff Deputy Daniel Ricks responded to a call from Bashir's neighbor stating her juvenile son had run away.

2

The neighbor spoke with Deputy Ricks about the incident and pointed to the Bashir's home, indicating her son might have gone there. Following the lead, Ricks pulled his police cruiser to the curb in front of the Bashir residence and saw two men seated on the trunk of a car parked in the carport at the end of the driveway. Deputy Ricks approached the two men, who were Bashir's two teenage sons, Akinsheye and Jabari, and began questioning them. Akinsheye and Jabari felt Deputy Ricks became abusive in his questioning. Akinsheye, the older of the two youths, told Jabari that he did not have to answer Ricks' questions and told Ricks he should talk with their mother.[1] At various times during the exchange, Akinsheye went in and out of the house through a doorway in the carport to awaken his sleeping mother. Saleem Bashir was not yet home from work.

Deputy Ricks called for assistance, and Deputy Rene Shirley responded. Moments after Deputy Shirley arrived, Akinsheye exited the house and returned to the carport. He told the deputies his mother was coming out to talk to them and instructed Jabari to come inside the house. Deputy Shirley told Akinsheye not to move and then grabbed him.[2] Deputy Shirley and Akinsheye began to struggle in

---

[1] According to Deputy Ricks' version of the encounter, Akinsheye was much more belligerent. Ricks says Akinsheye "bowed up," demanded that he leave the property, cursed loudly, interrupted his attempts to question Jabari, and told Jabari not to answer any questions.

[2] Deputy Shirley testified Akinsheye approached him in an aggressive manner.

the carport. Jabari saw the struggle and jumped off the trunk of the car where he was seated, prompting Deputy Ricks to grab him, throw him into the grass in the front yard, and spray him in the face with O.C. ("pepper") spray.

As the two officers wrestled with the youths, Brenda Bashir, their mother, emerged from the doorway into the carport and saw Deputy Shirley struggling with Akinsheye. She screamed and grabbed Akinsheye's arm. Deputy Shirley sprayed Akinsheye with pepper spray, and the struggle moved into the residence through the doorway. Deputy Shirley pinned Akinsheye on the living room couch, while Mrs. Bashir continued to pull on Akinsheye's arm. Shirley handcuffed Akinsheye, escorted him outside, and placed him in his police car. He then assisted Deputy Ricks in arresting Jabari. Once this was accomplished, the deputies turned to Mrs. Bashir, who was standing in the driveway, and told her she was also under arrest. Mrs. Bashir then ran back inside, and the deputies, joined by Deputy Edell Davis, chased her into the house and arrested her.

Saleem Bashir arrived home from work at least 20 minutes after his wife was arrested. As he approached the house, he saw several police cars and an ambulance parked out front. He walked up his driveway, identified himself, and asked Deputy Davis who was in charge. Davis directed him to Sergeant Reed. Sergeant Reed, who was not present for any of the arrests, told Bashir his sons had

4

been arrested for fighting with another juvenile. Reed also informed Bashir his wife had been arrested, but said Bashir was not allowed to speak with her. Bashir did not understand why his family had been arrested and was not satisfied with Sergeant Reed's explanation.

As he spoke with Sergeant Reed, Bashir noticed his seven-year-old son, Taajwar, crying and walking around unattended in the carport. He called out to his son and then "stopped talking to the officer and just went over there and picked [Taajwar] up." As he explained, "I just went over there and picked him up and I never said anything to anybody anymore other than until I got in the house there." Bashir carried his son into the house through the carport door. He sat down at the kitchen table, placed his son on his lap, and began to comfort the crying child. Deputy Davis followed Bashir through the doorway and into the kitchen. Davis had no warrant and did not ask permission to enter the residence. When Bashir saw Davis standing in the kitchen, he asked him to explain what had happened. Davis's explanation was also unsatisfactory to Bashir, and while still seated at the kitchen table with his son on his lap, Bashir said: "[I]f y'all didn't do this thing right I am suing the hell out of everybody down here." Davis responded, "[Y]ou fixing to go to jail." Suddenly, several officers rushed into the kitchen through the carport door. Deputy Davis grabbed Bashir's arm as someone snatched Taajwar

5

from his lap. Deputy Davis attempted to spray Bashir with pepper spray, but the cannister did not discharge. Bashir was thrown to the floor and handcuffed.

Bashir spent October 4, 2001, in jail and was released the following day. He was charged with misdemeanor obstruction of an officer and disorderly conduct. *See* O.C.G.A. §§ 16-10-24(a), 16-11-39(a). Akinsheye and Jabari were also jailed for the night. Mrs. Bashir was released at the scene so she could watch Taajwar; Deputy Shirley returned the next day with a warrant and arrested her again. Jabari pled guilty to misdemeanor obstruction, and all other charges against the Bashirs were dropped.

The Bashirs filed suit in the Northern District of Georgia, alleging false arrest and excessive force in violation of the Fourth Amendment and various state torts.[3] The district court granted summary judgment in favor of the deputies, concluding probable cause existed to support the arrests and the deputies were entitled to immunity from suit. Only Saleem Bashir has appealed. He contends the district court erred in granting summary judgment in favor of Deputy Davis and the unnamed deputies, arguing (1) his arrest inside his home was unlawful

---

[3] The complaint named Rockdale County, Sheriff Jeff Wigington and Lieutenant Tommy Eaton in their official capacities, and deputies Ricks, Shirley, Davis, and unnamed deputies in their individual and official capacities. After discovery, the district court granted judgment on the pleadings in favor of Rockdale County, Sheriff Wigington, and Eaton on the basis of Eleventh Amendment immunity.

because the deputies did not have a warrant, exigent circumstances, or consent to enter, and the unlawfulness of their conduct was clearly established such that they are not entitled to qualified immunity; (2) the deputies used excessive force in making the arrest because any force used in an unlawful arrest is excessive; and (3) the facts and circumstances of his arrest are sufficient to create a triable issue with respect to whether the deputies acted with actual malice such that official immunity would not bar litigation of the state tort claims.

## II. STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment based on qualified immunity and apply the same legal standards as the district court. *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003). "We resolve all issues of material fact in favor of the plaintiff, and then determine the legal question of whether the defendant is entitled to qualified immunity under that version of the facts." *Id.*

## III. DISCUSSION

A. *Section 1983 Qualified Immunity*

We have often stated that "[q]ualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a

7

reasonable person would have known." *Lee*, 284 F.3d at 1193-94 (quotations omitted). This immunity "allow[s] government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation," *id.* at 1194, and protects "all but the plainly incompetent or one who is knowingly violating the federal law," *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986).

The Supreme Court has established a two-part test for evaluating a claim of qualified immunity.[4] First, we must address the "threshold question" of whether the facts presented, taken in the light most favorable to Bashir, show the deputies' conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). If Bashir is successful on this score, we must then determine whether the right was "clearly established" such that "a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515 (2002) (quotations omitted).

---

[4] Before reaching this two-part test, the public official "must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Lee*, 284 F.3d at 1194 (quoting *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)). Here, there is no question Deputy Davis and the unnamed deputies were acting within the scope of their discretionary authority when they arrested Bashir. The burden then shifts to the plaintiff to show that qualified immunity is not appropriate. *Id.*

B.     *Warrantless Arrest*

Bashir contends his Fourth Amendment rights were violated when Deputy Davis and the unnamed deputies unlawfully entered his house and arrested him. He argues this right was clearly established at the time, such that a reasonable police officer in the deputies' position would have known what they were doing offended the Constitution.  We agree.

1.     *Constitutional Violation*.

It is a "'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380 (1980).[5]  This basic principle is founded on "the very core" of the Fourth Amendment:  "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."  *Id.* at 590, 100 S. Ct. at 1382 (quoting *Silverman v. United States*, 365 U.S. 505, 511, 81 S. Ct. 679, 683 (1961)).  The sanctity of the home is afforded special protection under the Fourth Amendment, such that "the reasons for upholding warrantless arrests in a public place do not apply to warrantless invasions of the privacy of the home."  *Id.* at 576, 100 S. Ct. at 1375.

---

[5] The Fourth Amendment to the United States Constitution reads, in part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."

"[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Id.* at 590, 100 S. Ct. at 1382. "As *Payton* makes plain, police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." *Kirk v. Louisiana*, 536 U.S. 635, 638, 122 S. Ct. 2458, 2459 (2002). Additionally, the prohibition on warrantless in-home arrests does not apply to situations where voluntary consent to enter has been obtained. *See Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S. Ct. 2793, 2797 (1990); *Holmes v. Kucynda*, 321 F.3d 1069, 1078-79 (11th Cir. 2003). As the foregoing makes clear, a warrantless arrest in a home violates the Fourth Amendment unless the arresting officer had probable cause to make the arrest *and* either consent to enter or exigent circumstances demanding that the officer enter the home without a warrant.

It is undisputed Deputy Davis and the unnamed deputies did not have a warrant prior to entering Bashir's home and effecting his arrest. The warrantless arrest inside the home was, therefore, presumptively unreasonable. Although the district court ruled the officers had probable cause to arrest Bashir for disorderly conduct, a ruling Bashir has not challenged on appeal, the existence of probable cause does not by itself validate a warrantless home arrest. *Payton*, 445 U.S. at

10

588-89, 100 S. Ct. at 1381 (quoting with approval *United States v. Reed*, 572 F.2d 412, 423 (2d Cir. 1978)); *see also Kirk*, 536 U.S. at 637, 122 S. Ct. at 2459 (reversing state court ruling that warrantless entry, arrest, and search did not violate the Fourth Amendment because there had been probable cause to arrest); *Minnesota v. Olson*, 495 U.S. 91, 95, 110 S. Ct. 1684, 1687 (1990) ("It was held in *Payton* . . . that a suspect should not be arrested in his house without an arrest warrant, even though there is probable cause to arrest him."); *United States v. Edmondson*, 791 F.2d 1512, 1515 (11th Cir. 1986) ("A finding of probable cause alone . . . does not justify a warrantless arrest at a suspect's home.").  The deputies must show their presence in the home was justified, either by exigent circumstances or consent.

The exigent circumstances exception to the warrant requirement recognizes a "'warrantless entry by criminal law enforcement officials may be legal when there is compelling need for official action and no time to secure a warrant.'" *United States v. Holloway*, 290 F.3d 1331, 1334 (11th Cir. 2002) (quoting *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S. Ct. 1942, 1949 (1978)).  Situations in which exigent circumstances exist include:  "danger of flight or escape, loss or destruction of evidence, risk of harm to the public or the police, mobility of a vehicle, and hot pursuit." *Id.*  None of these exigencies existed at the time of

11

Bashir's arrest. According to Deputy Davis's own deposition testimony, Bashir was not disorderly prior to entering the home and did not commit a crime outside. Once inside and seated at the kitchen table with his son on his lap, Bashir might have raised his voice to Deputy Davis, but he did not rise up out of his chair or physically threaten Davis in any way.[6] Thus, the record evidence reveals a complete absence of exigent circumstances attendant to the deputies' entry into the home and Bashir's arrest.

Deputy Davis argues his presence in the home was lawful because Bashir consented to it. He concedes, however, he never asked Bashir for permission to enter the house and Bashir never expressly invited him inside. He nonetheless contends Bashir "effectively invited" him into the house for him to explain what had happened. According to Davis, Bashir's invitation can be implied from the fact Bashir spoke to him as he walked into the house and asked him questions once they were inside.

Davis's implied consent argument fails because it is belied by the record evidence and because it is contrary to circuit precedent. The record shows the only time Bashir spoke with Deputy Davis outside was when Bashir asked to speak with the officer in charge. Davis directed Bashir to Sergeant Reed and did

---

[6] Thus, this is not a situation where exigent circumstances arose after an unlawful entry.

12

not participate in Bashir's conversation with Reed. When Bashir abruptly quit the conversation, he picked up his child and, in his words, "never said anything to anybody anymore other than until I got in the house there." Deputy Davis's deposition testimony confirms Bashir said nothing to him as he walked into the house.[7]

Bashir's actions fall far short of the conduct we have previously held sufficient to imply voluntary consent. In *United States v. Ramirez-Chilel*, 289 F.3d 744, 752 (11th Cir. 2002), we found consent could be implied from the defendant's body language when, in response to the officers' requests for admittance, the defendant "yield[ed] the right-of-way" to the officers. Conversely, there is no evidence in the record Bashir yielded the right-of-way in response to a request for permission to enter. Deputy Davis never asked for permission but simply followed Bashir into the house. These facts are materially similar to those

---

[7] Deputy Davis's deposition transcript contains the following exchange:
Q: Okay. And you directed him to your supervisor, Mr. Reed?
A: Yes, sir.
Q: Okay. Now, did you have any other conversation with Mr. Bashir outside?
A: Not that I can recall.
. . . .
Q: Okay. Now, is it fair then to say that you spoke to him and said, you need to talk with my supervisor; he then said something which you don't recall; he then went into his residence; and you had no further conversation or contact with him until you followed him into his residence?
A: That's true.

of *United States v. Gonzalez*, 71 F.3d 819, 830 (11th Cir. 1996), where we found consent to enter could not be inferred. In *Gonzalez*, a woman refused an officer permission to enter and search her home, and the officer simply followed her inside as she went to get a glass of water. *Id.* at 829. We held the warrantless entry was presumptively unreasonable and "reject[ed] the government's argument that [her] failure to 'bar' [the officer's] follow-on entry when she went into her house to get a drink of water can be viewed as an adequate implied consent to that warrantless intrusion." *Id.* We also rejected the notion that "failure to object to a search equals consent to the search." *Id.* at 829-30 (internal quotations omitted). To permit the government to show consent to enter from the lack of an objection to the entry "would be to justify entry by consent and consent by entry. This will not do." *Id.* at 830 (quoting *United States v. Shaibu*, 920 F.2d 1423, 1426 (9th Cir. 1990) (internal quotations omitted)). Thus, consent cannot reasonably be inferred from Bashir's simple act of disengaging from conversation with Sergeant Reed and walking into the house. Nor can consent reasonably be inferred from Bashir's conduct once Davis was already inside.

Unable to show exigent circumstances or consent, Deputy Davis advances a final argument to justify his warrantless intrusion. He contends his presence in the home at the time of Bashir's arrest was a lawful extension of his earlier entry when

14

he assisted in arresting Mrs. Bashir. We will assume for the purposes of discussion that Davis's initial entry to arrest Mrs. Bashir was lawful under the "hot pursuit" exception to the warrant requirement. *See generally United States v. Santana*, 427 U.S. 38, 96 S. Ct. 2406 (1976) (discussing the "hot pursuit" exception). It does not follow, however, that Davis's reentry 20 minutes later should similarly be excused.

Davis does not argue the exigent circumstances surrounding Mrs. Bashir's arrest continued to exist after the arrest was completed. *See Mincey v. Arizona*, 437 U.S. 385, 393, 98 S. Ct. 2408, 2413 (1978) (stating a warrantless entry must be "strictly circumscribed by the exigencies which justify its initiation") (quotation omitted). Instead, Deputy Davis posits something different: since the initial entry to arrest Mrs. Bashir was lawful, police investigating the arrest could lawfully enter and reenter the home for some period of time thereafter, and thus, his presence in the home at the time of Bashir's arrest was lawful. Davis cites no case law supporting his position.[8] But we need not consider whether he is correct on

---

[8] None of the cases Davis cites support his lawful reentry argument. Most of the cases he cites are in the line following *Michigan v. Tyler*, 436 U.S. 499, 98 S. Ct. 1942 (1978), in which the Supreme Court recognized an exception to the warrant requirement when firemen enter a structure to put out a fire. Those cases recognize the exigencies attendant to a fire do not end "with the dousing of the last flame," but continue for a reasonable time to justify the warrantless entry and reentry of officials investigating the blaze. *Id.* at 510, 98 S. Ct. at 1950. *Tyler* and its progeny are inapposite to this case. The exigency relied upon to justify the initial warrantless entry and arrest of Mrs. Bashir expired the moment of her arrest.

15

the law because he is wrong on the facts. At oral argument, Davis conceded his reentry was unrelated to any investigation of Mrs. Bashir's arrest. Indeed, the record is silent as to whether there was any investigation underway that required the presence of officers in the home. There were no officers inside when Bashir arrived at least 20 minutes after Mrs. Bashir's arrest. Although officers and medical personnel were still on the scene, all were outside either providing medical treatment, standing around the front yard, or talking with each other. Davis himself was "standing still" and "saying nothing" for 20 minutes before Bashir arrived. Thus, under these facts, Davis's reentry cannot reasonably be explained as a lawful extension of his initial entry.

In sum, Bashir's warrantless arrest in his home is presumptively unreasonable under the Fourth Amendment and the record taken in the light most favorable to Bashir does not establish the existence of any exception to the warrant requirement. Thus, Bashir has satisfied the first prong of the qualified immunity analysis by demonstrating that his warrantless arrest was unlawful.

    2.    *Clearly Established Law*.

The next question we address in the qualified immunity analysis is whether the constitutional right was "clearly established" at the time of the violation. "The relevant, dispositive inquiry in determining whether a right is clearly established is

whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202, 121 S. Ct. at 2156. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* We look to case law to see whether "the right the official is alleged to have violated [has] been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987) (citation omitted); *see also Hope*, 536 U.S. at 741, 122 S. Ct. at 2516 ("[T]he salient question . . . is whether the state of the law . . . gave [the officers] fair warning that their alleged treatment of [the plaintiff] was unconstitutional."). Thus, "*fair and clear notice* to government officials is the cornerstone of qualified immunity." *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002) (quoting *Marsh v. Butler County*, 268 F.3d 1014, 1031 (11th Cir. 2001) (en banc)).

We have stated the requisite "fair and clear notice" may be given in various ways. *Id.* In rare cases, "the words of a federal statute or federal constitutional

17

provision may be so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful." *Id.* More frequently, however, we must look to case law existing at the time of the violation to see if the right was clearly established. *Id.* at 1351. "While 'some broad statements of principle in case law are not tied to particularized facts and can clearly establish law applicable in the future to different sets of detailed facts,' more often, the facts are so material to the violation at issue that such generalized principles are insufficient, and we must look to precedent that is factually similar to the case at hand." *Williams v. Consol. City of Jacksonville*, 341 F.3d 1261, 1270 (11th Cir. 2003) (quoting *Vinyard*, 311 F.3d at 1351).[9]

We conclude that, under the law existing at the time, it was clearly established the deputies' conduct violated the Fourth Amendment. A reasonable law enforcement officer faced with these circumstances would have known he could not enter the home and arrest Bashir without a warrant, exigent circumstances, or consent. That doing so would offend the Fourth Amendment was clearly established by the precedent recounted above, including *Payton*, 445

---

[9] "When case law is needed to 'clearly establish' the law applicable to the pertinent circumstances, we look to decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state." *Marsh*, 268 F.3d at 1032-33 n. 10.

U.S. at 586, 100 S. Ct. at 1380, which sets forth the law with "obvious clarity," *Vinyard,* 311 F.3d at 1351. Moreover, *Gonzalez*, *supra*, is not "distinguishable in a fair way" from the facts of this case. *Saucier*, 533 U.S. at 202, 121 S. Ct. at 2157. *Gonzalez* clearly established a reasonable officer in Deputy Davis's position could not infer consent from Bashir's conduct.

Accordingly, Deputy Davis and the unnamed deputies are not entitled to qualified immunity, and the district court erred in granting summary judgment in their favor on Bashir's unlawful arrest claim.

C.    *Excessive Force*

We next consider whether summary judgment was appropriate as to Bashir's excessive force claim. The district court concluded Bashir failed to show the deputies used unreasonable force in effecting his arrest. Bashir does not challenge this conclusion on appeal. Instead, he argues Davis applied "excessive force" because any force used in an illegal arrest is necessarily excessive.

"Under this Circuit's law . . . a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000) (citing *Williamson v. Mills*, 65 F.3d 155, 158-59 (11th Cir. 1995)). The right to make an arrest "necessarily carries with it the right to use some degree of

19

physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871-72 (1989). It follows, then, if an arresting officer does not have the right to make an arrest, he does not have the right to use any degree of force in making that arrest. This is the premise of Bashir's "excessive force" claim; but this is not what is meant by "excessive force." An excessive force claim evokes the Fourth Amendment's protection against the use of an unreasonable quantum of force (i.e., non-de minimis force unreasonably disproportionate to the need) in effecting an otherwise lawful arrest. When properly stated, an excessive force claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest. A claim like Bashir's–that the deputies used excessive force in the arrest because they lacked the right to make the arrest–is not a discrete constitutional violation; it is dependent upon and inseparable from his unlawful arrest claim. *Jackson*, 206 F.3d at 1171. We reiterate, where an excessive force claim is predicated solely on allegations the arresting officer lacked the power to make an arrest, the excessive force claim is entirely derivative of, and is subsumed within, the unlawful arrest claim. *Id.*; *Williamson*, 65 F.3d at 158-59. Bashir does not present a discrete

excessive force claim and, therefore, his excessive force claim fails as a matter of law.

This is not to say that Bashir cannot recover damages for the force used in his arrest. To the contrary, the damages recoverable on an unlawful arrest claim "include damages suffered because of the use of force in effecting the arrest." *Williamson*, 65 F.3d at 158-59; *Motes v. Myers*, 810 F.2d 1055, 1059 (11th Cir. 1987) (stating that "[i]t is obvious that if the jury finds the arrest unconstitutional, the use of force and the search were unconstitutional and they become elements of damages for the § 1983 violation"). But, to permit a jury to award damages on Bashir's excessive force and unlawful arrest claims individually "would allow [him] to receive double the award for essentially the same claims." *Cortez v. McCauley*, 438 F.3d 980, 996 (10th Cir. 2006).

Bashir asserts *Thornton v. City of Macon*, 132 F.3d 1395 (11th Cir. 1998), stands for the proposition that any force used in an unlawful arrest is excessive force sufficient to give rise to a discrete Fourth Amendment claim. In *Thornton*, we concluded the district court did not err in denying the police officers' motion for summary judgment on the plaintiffs' false arrest and excessive force claims. We first found no reasonable police officer would have believed probable cause existed to arrest the plaintiffs. *Id.* at 1399-1400. Turning to the excessive force

claims, we applied the factors articulated in *Graham*, 490 U.S. at 294, 109 S. Ct. at 1871, to assess the reasonableness of the force used, and noted the plaintiffs were not suspected of committing a serious crime, did not pose an immediate threat to anyone, and did not resist arrest. *Id.* at 1400.[10] Yet, the officers "used force" in arresting the plaintiffs, wrestling one to the ground and throwing the other on the hood of a patrol car. *Id.* "Under these circumstances," we held, "the officers were not justified in using *any* force, and a reasonable officer thus would have recognized that the force use was excessive." *Id.*

*Thornton* does not stand for the proposition that an independent excessive force claim may be predicated solely on the lack of power to make the arrest. There is no indication the plaintiffs in *Thornton* made such a claim. Instead, based on the court's analysis of *Graham*, it appears the excessive force claim in *Thornton* was predicated on the unreasonableness of the quantum of force used under the circumstances. Therefore, the excessive force claim was independent of the power to arrest, and *Thornton* had no occasion to discuss a claim such as the one Bashir presents, which is inseparable from his unlawful arrest claim. Thus,

---

[10] In *Graham*, the Supreme Court held whether the force used in an arrest is reasonable turns on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S. Ct. at 1872.

Bashir's reliance on *Thornton* is misplaced. *See also Jackson*, 206 F.3d at 1171 n.20 (distinguishing *Thornton*).

We therefore conclude the district court did not err in granting summary judgment on Bashir's excessive force claim, and we affirm the judgment on that claim.

B.     *State Law Official Immunity*

The Georgia Constitution provides that state officers and employees "may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions." Ga. Const., art. I, § 2, ¶ IX(d). Bashir does not dispute Davis and the unnamed deputies were acting in the performance of their discretionary duties as state officials. Thus, to pierce the deputies' official immunity, Bashir must demonstrate they acted with actual malice. *Adams v. Hazelwood*, 520 S.E.2d 896, 898 (Ga. 1999). The Supreme Court of Georgia has explained that "'actual malice' requires a deliberate intention to do wrong and denotes 'express malice or malice in fact.'" *Id.* (quoting *Merrow v. Hawkins*, 467 S.E.2d 336, 338 (Ga. 1996)) (citation omitted).

The district court entered summary judgment in favor of the deputies on Bashir's state law claims, finding they were entitled to official immunity because

the existence of probable cause for the arrest vitiated any claim of actual malice.[11]

On appeal, Bashir does not challenge the district court's ruling as to probable cause to arrest. Instead, he contends actual malice may be inferred from the facts of his warrantless arrest. We disagree. Although, as we have said, the record supports the conclusion the deputies acted unreasonably and violated Bashir's Fourth Amendment rights, Bashir has not sustained his burden of demonstrating the existence of a genuine issue of fact that the deputies possessed "a deliberate intention to do wrong" sufficient to satisfy the actual malice standard. Thus, the district court did not err in granting summary judgment on Bashir's state law claims.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's entry of summary judgment in favor of Deputy Davis and the unnamed deputies with respect to Bashir's excessive force and state law tort claims, but reverse the entry of summary judgment on his unlawful arrest claim.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

[11] Bashir asserted state tort claims of intentional and negligent infliction of emotional distress, false light, assault, battery, malicious prosecution, false imprisonment, and negligence per se.