[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-11982

_____

D.C. Docket No. 1:09-cv-00716-WS-M

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 7, 2011
JOHN LEY
CLERK

FRANK DAVID RIORDAN,
acting in his representative capacity as the
duly appointed representative of the
estate of Channing Lee Riordan, deceased,

Plaintiff - Appellant,

versus

ALLEN O'SHEA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(December 7, 2011)

Before BARKETT and PRYOR, Circuit Judges, and BUCKLEW,[*] District Judge.

PER CURIAM:

Frank Riordan, as the personal representative of the estate of Channing Rirodan, appeals an adverse summary judgment on his 42 U.S.C. § 1983 excessive force claim against Mobile County deputy sheriff Allen O'Shea. After careful review and with the benefit of oral argument, we affirm.

## I. Background

The record, viewed in the light most favorable to Riordan, shows the following. On November 4, 2007, at approximately 9:30 p.m., Regina Vance called 9-1-1 because Channing Riordan ("Channing"), her husband, was drunk and was attempting to get his seven-year old son to leave with him in his truck. Earlier that evening, Channing had been holding his .22 caliber rifle, but Vance was able to take it from him and place it under the bed in their bedroom. Vance told the 9-1-1 dispatcher about the gun in the house. The 9-1-1 dispatcher then dispatched O'Shea to the house.

When O'Shea arrived, Vance met him at his car and repeated what she had told the dispatcher. O'Shea proceeded to the right side of the home toward the

---

[*] Honorable Susan C. Bucklew, United States District Judge for the Middle District of Florida, sitting by designation.

backyard, where Channing's truck was parked, while Vance stayed in the front yard, from where she could see O'Shea but not Channing or the truck. There were two lights attached to the back of the home, which were on, and a street lamp in the neighbor's yard, which was also on. To improve visibility, O'Shea shined his flashlight on the truck and saw Channing's son standing near the passenger's side. O'Shea asked Channing's son to come to him and Channing's son complied. At that point, O'Shea sensed movement to his left, and as he turned and shined his light in that direction, he saw Channing running toward him with an object in his hand. O'Shea thought that the object was a tire tool, as it was shiny and Channing was waving it like a knife or machete as he ran toward O'Shea. The object was later identified as a one-to-two foot wooden spindle, which was painted green, from a kitchen chair Channing had broken earlier in the evening. As Channing was running toward O'Shea with the spindle, O'Shea heard him yelling, "You motherfucker, I'm going to kill you."[1] Seconds later,[2] when Channing was

---

[1] When asked what Channing was yelling, Vance testified as follows:

A: Like, oh, no, something. Oh, no, you don't. I don't remember.

Q: Do you recall whether or not he was cussing?

A: I don't remember. I just remember that, oh, no, you don't.

Vance's testimony does not create a disputed issue of fact on this point, as she could not recall whether Channing used profanities and threatened to kill O'Shea. Thus, we must accept as true

approximately 15 feet away, O'Shea drew his weapon and fired two shots at Channing, without identifying himself as a law enforcement officer or warning Channing that he would shoot if Channing kept approaching.[3] One shot hit Channing in the head and killed him.

Based on these events, Riordan brought this § 1983 action, alleging that O'Shea violated Channing's Fourth Amendment rights by using excessive force. The district court granted O'Shea summary judgment on qualified immunity grounds, concluding that O'Shea did not use constitutionally excessive force.

## II. Discussion[4]

that Channing threatened to kill O'Shea. See Pace v. Capobianco, 283 F.3d 1275, 1278-79 (11th Cir. 2002)

[2] Riordan claims on appeal that O'Shea had at least 30 seconds to respond to Channing's advance. But the evidence does not support this contention. O'Shea testified that everything happened very quickly, while Vance testified that she did not know how long it was but that it seemed to her like an "eternity." Further, in a statement made to police in the aftermath of the shooting, Vance apparently made some reference to 25 or 30 seconds, but, as the statement was not made part of the record, it is unclear what time period she was referring to, and in any event, she later testified that she did not know if that statement was accurate and that she did not know why she made the statement. Taken together, Vance's testimony on this point is too equivocal to create a disputed issue of fact, and thus we must accept Channing's testimony that he had almost no time to respond to Channing's advance.

[3] O'Shea testified that he attempted to retreat and stumbled backward over a tree root before drawing his weapon. Vance testified, however, that O'Shea stood still the entire time. We must resolve this conflict in favor of the non-movant, Riordan, and thus conclude that O'Shea did not retreat.

[4] We review a summary judgment based on qualified immunity de novo, applying the same legal standards as the district court. Bashir v. Rockdale Cnty., Ga., 445 F.3d 1323, 1326 (11th Cir. 2006). We construe the evidence and draw all reasonable inferences in the light most

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).[5] Thus, to determine whether a defendant is entitled to qualified immunity, a court must determine: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated the plaintiff's constitutional rights; and (2) whether the right at issue was clearly established at the time of the constitutional violation. Id. It is within a court's discretion "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818 (2009). We begin our analysis with the first question: whether O'Shea violated Channing's constitutional rights.

The constitutional right at issue is the Fourth Amendment right to be free from the government's use of excessive force. "[C]laims that law enforcement

favorable to the plaintiffs, and determine the legal question of whether the defendants are entitled to qualified immunity under that version of the facts. Id. at 1327.

[5] There is no dispute that O'Shea, a government official, was performing discretionary duties within the scope of his employment.

officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." Graham v. Connor, 490 U.S. 386, 395 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Id. at 396 (internal quotation marks omitted). Further, "the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." Id. Factors we consider in making a reasonableness determination include whether the suspect threatened the officer with a weapon and posed a threat of serious physical harm, either to the officer or to others, and whether, where feasible, some warning had been given. See Tennessee v. Garner, 471 U.S. 1, 11-12 (1985).

Here, while Channing's death is tragic, and not every officer who fatally wounds a suspect without warning when the suspect is threatening the officer with a non-deadly weapon will be entitled to qualified immunity, our inquiry is limited to whether O'Shea's use of force was objectively unreasonable under the

6

particular circumstances present in <u>this</u> case.  Based on the undisputed facts, we cannot say that O'Shea violated Channing's constitutional rights.  O'Shea knew that Channing had a gun earlier during the altercation with Vance.  Channing threatened O'Shea with a weapon and posed a threat of serious physical harm to O'Shea.  All O'Shea knew at the time was that the object was shiny and that Channing was wielding the object as a weapon, so it was not unreasonable for O'Shea to conclude that the object was a dangerous weapon.  Further, although the weapon turned out to be a wooden chair spindle, it still could have caused O'Shea serious physical harm at close range, and it is significant that O'Shea heard Channing threatening to kill him, which made it reasonable for O'Shea to conclude that his life was in danger.  Moreover, as Channing was running toward him from a relatively short distance away, O'Shea cannot be constitutionally faulted for failing to warn Channing in the seconds that he had to respond.  Finally, there is no evidence that O'Shea aimed at Channing's head and intended to kill him rather than merely wound him.  Under these circumstances, we cannot say that O'Shea's actions were objectively unreasonable.  Accordingly, O'Shea is entitled to qualified immunity.

**AFFIRMED.**