BERZON, Circuit Judge,
concurring:
Is it fine for police officers flatly to tell the drivers they stop that they observed— or thought they observed — a traffic violation when they really did not? We hold today that it is. And I cannot disagree, as the line of cases that begins with Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), seems to lead ineluctably to that distressing conclusion. But lying to government officials can lead to lengthy prison terms. See - U.S.S.G. § 2J1.3(a) (providing a base offense level of fourteen for perjury-type offenses, which, at criminal history category I, results in a recommended sentence of fifteen to twenty-one months). One would expect that lying by police officers to citizens would have consequences as well.
Whren and the other cases the majority cites do not deal directly with flat out lies about what police officers saw. Instead, Whren dealt with pretextual stops — that is, instances in which the officers did perceive actions that violated the traffic laws, but were really using the traffic violations as a basis for investigating some other crime. Perhaps there was no reasonable suspicion as to the real reason for the stop, just a hunch. Or perhaps the officers did not want to reveal the real reason for the stop, as the underlying criminal investigation was still ongoing. United States v. Evans noted that law enforcement terms this type of stop a “wall stop” — that is, “the traffic stop [i]s to be independent and clear from the [ongoing] investigation to protect [law enforcement’s] information and the data and identities of the sources of information.” 786 F.3d 779, 781 n. 2 (9th Cir.2015) (alterations omitted). In either instance, police officers are usually confident that they can “develop ... probable cause” of a traffic violation. Id. at 781. The traffic laws are sufficiently comprehensive, as well as general, that almost all drivers violate at least one whenever they are on the road. See Whren, 517 U.S. at 810, 116 S.Ct. 1769 (noting the defendants’ argument to this effect).
But what if the driver is very careful not to break any laws, as one might be if carrying a cargo of illegal drugs? And what if the police officers are intent nonetheless on catching their targets, without revealing that they are pretty sure what is *677 in the car? Here, the law enforcement solution was to flat out he. Not just about why the car was being stopped (as in Whren and its progeny), but also about what they had seen — the purported traffic violation.
As I read Whren, 517 U.S. 806, 116 S.Ct. 1769, and Devenpeck v. Alford, 543 U.S. 146, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004), there is no plausible argument for treating this sort of lie differently from the he involved in Whren — as to why the officer is actually stopping the suspect — or the misstatement in Devenpeck — as to the offense as to which the officer had probable cause for an arrest. In both instances, the Supreme Court found no Fourth Amendment violation as long as there was indeed a proper basis for the stop or arrest on the facts known to the officers. As a result, the suspect in both instances had no useful opportunity verbally to explain why he should not be cited or arrested, as the purported basis for the police action was not binding on law enforcement anyway. That any such explanation would have been similarly futile here, this time because the police were lying about what they saw, does not distinguish Whren and Devenpeck.
The upshot is that approving the practice used in this case is the inevitable result of the Whren/Devenpeck line of cases. But as countless commentators have warned, Whren and related cases “hint[ ] to law enforcement that it can escape the Fourth Amendment’s restrictions if it offers phony explanations for [its] actions.” Wayne R. LaFave, The “Routine Traffic Stop” from Start to Finish: Too Much “Routine, ” Not Enough Fourth Amendment, 102 Mich. L.Rev. 1843, 1904 (Aug.2004). The Whren-type precedents are especially troubling in that they enable artifice and abuse by law enforcement, with disproportionate effect on racial minorities; “[flndeed, as the recent debate over racial profiling demonstrates all too clearly, a relatively minor traffic infraction may often serve as an excuse for stopping and harassing an individual.” Atwater v. City of Lago Vista, 532 U.S. 318, 372, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) (O’Con-nor, J., dissenting). At least in part because of these considerations, I would not foreclose, in another case, holding that there is a due process (not Fourth Amendment) based right to be informed of the true basis for a stop or arrest. Devenpeck, I note, left open that possibility. See 543 U.S. at 151, 155, 125 S.Ct. 588. But no such argument was made here.
Many states find the officers’ conduct here concerning, for the same reasons I do. For that reason, many jurisdictions require law enforcement officers to inform detainees of the reasons for custodial arrests, and some hold them responsible for misstatements. While Magallon-Lopez does not argue in this case for a constitutionally-based requirement that police officers identify some basis for a stop or arrest, it is good police practice to inform a detainee of the basis of a detention, as Devenpeck acknowledges. See 543 U.S. at 155, 125 S.Ct. 588. The non-exhaustive list of states that have adopted such a requirement includes New York, California, Massachusetts, and North Carolina, all of which have enacted statutes to this effect. See N.Y.Crim. Proc. Law § 140.15(2); CaLPenal Code § 841; Mass. Gen. Laws ch. 263 § 1; N.C. GemStat. § 15A-401(c)(2)c. The Massachusetts statute— perhaps to impose the same standard of truthfulness on both law enforcement and everyday citizens — specifically requires that an officer’s statement be true, and punishes an officer’s false statement by a fine of up to $1,000 and/or imprisonment for up to one year. Mass. Gen. Laws ch. 263 § 1. Georgia’s courts have also established, by precedent, the requirement that *678 an officer inform an arrestee of the cause of his or her arrest. See Dorsey v. State, 7 Ga.App. 366, 66 S.E. 1096, 1097-98 (1910); see also Bashir v. Rockdale Cnty., 445 F.3d 1323 (11th Cir.2006) (reversing summary judgment for officers on the plaintiffs state-law unlawful arrest claim because, the officers did not inform the plaintiff of the- crime for which he was arrested); • ‘
Most relevant here — as Magallon-Lopez was stopped in Montana by a Montana officer — Montana requires an arresting officer to' “inform the person to be arrested of the officer’s authority, of the intention to arrest that person, and of the cause of the arrest.” MoniCode Ann. § 46-6-312 (emphasis added). Magallon-Lopez has not asserted that his arrest was unlawful under this provision, and Montana’s courts have not extended the statute, applicable only to “arrests,” to Terry-type stops premised on reasonable suspicion, as occurred 'here. Nonetheless, that Montana and other states have such laws in place may guard against the ’frequent use of stops similar to the one here.