[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 17-14377
Non-Argument Calendar

————————————————

D.C. Docket No. 2:16-cv-00814-SPC-MRM

ANITA ANDREWS,

Plaintiff-Appellee,

versus

MIKE SCOTT,
in his official capacity as Sheriff of Lee County, et al.,

Defendants,

DEPUTY BRANDON MARSHALL,
SERGEANT ROBERT KIZZIRE,

Defendants-Appellants.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

(April 5, 2018)

Before MARCUS, ROSENBAUM and HULL, Circuit Judges.

PER CURIAM:

In this action under 42 U.S.C. § 1983, defendants Officer Brandon Marshall and Sergeant Robert Kizzire, in their individual capacities, appeal from the district court's denial of their Rule 12(b)(6) motion to dismiss on the ground of qualified immunity. Both Officer Marshall and Sergeant Kizzire work for the Sheriff's Department of Lee County, Florida. After careful review, we affirm.

## I. BACKGROUND

This action arises from a November 2012 incident in which plaintiff Anita Andrews was arrested and detained for approximately two days. Given the Rule 12(b)(6) posture of this case, we first review the allegations of the complaint as if all those allegations were true. See Cottone v. Jenne, 326 F.3d 1352, 1355 & n.1 (11th Cir. 2003).

### A.    Traffic Stop and Arrest

Late in the evening of November 6, 2012—an election day—Andrews and her companion, driver Keith O'Bryant, a resident of Virginia, participated in a post-election cleanup. They removed political signs from public roadways and intersections and placed them in the bed of driver O'Bryant's pickup truck. Both were wearing "expensive semi-formal/formal" clothing.

At approximately 1:00 a.m. on the morning of November 7, 2012, while Andrews and O'Bryant were collecting political signs, defendant Officer Marshall pulled them over because O'Bryant's truck had a nonworking headlight. Driver O'Bryant gave his driver's license and registration to Officer Marshall. He told Officer Marshall that he was aware of the faulty headlight but had not had the opportunity to have it fixed.

Officer Marshall asked O'Bryant and Andrews where they were going, what they were doing, how they knew each other, and what business O'Bryant had in Florida. O'Bryant answered some of these questions, and he told Officer Marshall both his name and Andrews's name. However, O'Bryant declined to answer questions about how he knew Andrews, where they were staying, and whether they were staying together. Officer Marshall ran an identification check on Andrews and O'Bryant.

Plaintiff Andrews "advised [Officer Marshall] that she had certain privacy guarantees protected under the U.S. Constitution." Officer Marshall then asked Andrews for identification. Andrews replied that she did not have identification, but added that, as a passenger, she was not required to have any. Marshall told Andrews that he was entitled to question and demand identification from anyone in the vehicle.

3

According to the complaint, Officer Marshall acknowledged that he did not suspect either Andrews or O'Bryant of having committed a crime. Marshall also commented that Andrews's and O'Bryant's appearance discounted the possibility that they were doing anything wrong. As noted earlier, both Andrews and O'Bryant were wearing "expensive semi-formal/formal" clothing. Nevertheless, Marshall summoned additional officers to the scene, telling passenger Andrews that he could not "let go" of the matter because she refused to disclose her name. However, Officer Marshall already knew Andrews's name, because O'Bryant had told him.

Additional officers soon arrived, including defendant Sergeant Kizzire. Under questioning, passenger Andrews told the officers that there were no drugs or guns in the truck. Shortly thereafter, Sergeant Kizzire said, "I'm tired of this." Without asking Andrews to get out of the truck, Kizzire "aggressively pull[ed] Andrews out of the vehicle," "forcefully turn[ed] her around," "slammed [her] against the car door," and "cuff[ed] her hands behind her back." Andrews was patted down, including on her breasts and crotch, and then placed in the back of Officer Marshall's police car.

Officer Marshall spoke to Andrews while she was in the back of his police car. Marshall asked: "So, Anita, are you going to tell us your name?" Marshall

also told Andrews that it was "irrelevant that she did not break any laws," because she was being seized "to teach her a lesson."

Officer Marshall then asked Andrews additional questions about the political signs in the back of the truck. Andrews told Marshall that she and driver O'Bryant were discarding political signs after the election, and that they had performed this civic service for decades.

Officer Marshall informed Andrews of her Miranda[1] rights, and placed driver O'Bryant in the back of the police car along with Andrews. Marshall made it clear to Andrews that her cooperation would keep O'Bryant out of trouble. Meanwhile, the officers discussed how to arrest Andrews legally. One officer said, "we need to teach her a lesson."

Officer Marshall drove Andrews and driver O'Bryant to the police station. On the way, Marshall told Andrews and O'Bryant they would be charged with "Loitering and Prowling," which, he explained, was a term officers used when they were unable to tell whether a crime was committed but needed an excuse to bring someone in. Marshall stated he did not know the specific justification for bringing in Andrews, but said "we're going to find something really good for her."

When Andrews arrived at the police station, her right arm was twice its normal size due to the rough handling of the officers. Andrews was booked for

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

5

loitering and prowling.  Around this time, O'Bryant observed an officer writing the probable cause affidavit for Andrews's arrest.  O'Bryant saw the officer conferring with other officers, including Marshall and Kizzire, as they "attempt[ed] to get their story straight."

Andrews was then transported to the county jail's psychiatric ward, where she was held for observation until the following day.  On the evening of November 8, 2012, Andrews was released.  Ultimately, all charges against Andrews and O'Bryant were dropped.

Based on the foregoing allegations, plaintiff Andrews asserted claims under § 1983 against Officer Marshall individually for false arrest and imprisonment (Count 1) and retaliation (Count 9), and against Sergeant Kizzire individually for false arrest and imprisonment (Count 2), retaliation (Count 8), and excessive force (Count 11).  Andrews also asserted other claims against Officer Marshall, Sergeant Kizzire, and other defendants, which are not at issue in this appeal.

Defendants Marshall and Kizzire moved to dismiss the § 1983 claims against them, contending they were entitled to qualified immunity.  The district court denied their motion to dismiss.  Officer Marshall and Sergeant Kizzire now appeal.[2]

---

[2]The district court also denied the defendants' motion to dismiss Andrews's state law claims.  Those claims are not at issue in this appeal.

## II. DISCUSSION

### A.    Standard of Review

We review de novo a district court's denial of qualified immunity. Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003).  At the motion to dismiss stage, the determination of whether a complaint sufficiently alleges a constitutional violation also is a question of law that we review de novo. Id.  In reviewing a complaint, "we accept all well-pleaded factual allegations as true and construe the facts in the light most favorable to the plaintiff." Id.

### B.    Rule 12(b)(6) Motions

A complaint is subject to dismissal under Rule 12(b)(6) when its allegations on their face show that an affirmative defense bars recovery on the claim. Cottone, 326 F.3d at 1357.  Once the defendants advance the affirmative defense of qualified immunity, the complaint must be dismissed, unless the plaintiff's allegations "state a claim of violation of clearly established law." Id. (quotation omitted).

### C.    Qualified Immunity Principles

The affirmative defense of qualified immunity "completely protects" government officials performing discretionary functions from suit in their individual capacities, unless their conduct "violates clearly established statutory or constitutional rights of which a reasonable person would have known." Cottone,

326 F.3d at 1357 (quotation omitted).  Thus, to receive the benefit of qualified immunity, a government official must first show that he was acting within his discretionary authority.  Id.  Here, it is undisputed that Officer Marshall and Sergeant Kizzire were performing their discretionary functions when they stopped and arrested plaintiff Andrews.

Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show the defendant is not entitled to qualified immunity.  Id. at 1358.  A defendant is not entitled to qualified immunity if (1) his alleged conduct violated a constitutional right and (2) the right was clearly established at the time of the violation.  Id. at 1358-59.  A right is "clearly established" if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 1359 (quotation omitted).  In making this inquiry, the salient question is whether the state of the law gave the officer "fair warning that [his] alleged [conduct] was unconstitutional."  Id. (quotation omitted) (second alteration in original).

**D.    Arguable Probable Cause**

A plaintiff asserting a claim for false arrest under § 1983 must show that she was arrested without a warrant and without probable cause.  Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010).  Therefore, the existence of

probable cause at the time of arrest "is an absolute bar to a subsequent constitutional challenge to the arrest." Id.

A police officer need not have actual probable cause, but only "arguable" probable cause, to receive qualified immunity from a false arrest claim. Grider v. City of Auburn, Ala., 618 F.3d 1240, 1257 (11th Cir. 2010). Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." Id. (quotations omitted). Whether an officer had arguable probable cause "depends on the elements of the alleged crime and the operative fact pattern." Id.

The arguable probable cause standard is an objective one, and ordinarily does not include an inquiry into the officer's subjective intent or beliefs. Id. "[The officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." Devenpeck v. Alford, 543 U.S. 146, 153, 125 S. Ct. 588, 594 (2004). Qualified immunity thus provides for an "accommodation for reasonable error" in determining whether an arresting officer had arguable probable cause. Hunter v. Bryant, 502 U.S. 224, 229, 112 S. Ct. 534, 537 (1991) (quotation omitted). However, qualified immunity does not protect an officer who is "plainly incompetent" or who "knowingly violate[s] the law." Id. (quotations omitted).

9

### E.    False Arrest against Marshall and Kizzire

On appeal, the defendants argue—as they did in the district court—that they had arguable probable cause to arrest Andrews for two offenses: loitering or prowling, with which she was charged, and theft.  But the problem for the defendants is that at this Rule 12(b)(6) stage, we must accept plaintiff Andrews's version of the events.  Under her version, the defendants effectively told her they had no basis to arrest her but were doing so to teach her a lesson.[3]

According to the complaint, Officer Marshall told Andrews and O'Bryant that he did not suspect them of committing any crime.  Officer Marshall said it was "irrelevant that [Andrews] did not break any laws," because she was being seized "to teach her a lesson."  On the way to the police station, Marshall told Andrews and O'Bryant they would be charged with "Loitering and Prowling" because the officers needed an excuse to bring them in.  And Marshall admitted he did not have a justification for bringing in Andrews, but said "we're going to find something really good for her."

Ordinarily, we do not look to an officer's subjective state of mind when determining whether he had arguable probable cause to make an arrest.  <u>Grider</u>,

---

[3]As noted above, because this appeal is from the denial of the defendants' Rule 12(b)(6) motion to dismiss, we accept plaintiff Andrews's version of the facts, even if her version is "hotly disputed."  <u>See</u> <u>Vineyard v. Cty. of Murray, Ga.</u>, 990 F.2d 1207, 1209 n.1 (11th Cir. 1993) (reciting the facts in the light most favorable to the plaintiff, in an appeal from the district court's denial of the defendants' motion for a directed verdict, even though the plaintiff's version was "hotly disputed at trial").

618 F.3d at 1257.  But this is not a case where the arresting officers mistakenly believed they had probable cause where they had none, or believed they had probable cause to arrest Andrews for one offense when another would have been more appropriate.  See, e.g., Devenpeck, 543 U.S. at 149-50, 155-56, 125 S. Ct. at 591-92, 594-95 (concluding that an arresting officer may be entitled to qualified immunity even if the offense actually establishing probable cause is not "closely related" to the offense identified by the officer); Rushing v. Parker, 599 F.3d 1263, 1265, 1268-69 (11th Cir. 2010) (holding that officers were entitled to qualified immunity after arresting a person they mistakenly believed was the subject of an arrest warrant).  Rather, Officer Marshall made clear he did not believe there was any basis to arrest Andrews, but the officers arrested her anyway.  In short, the officers here did not make a "reasonable error."  See Hunter, 502 U.S. at 229, 112 S. Ct. at 537.  Instead, they "knowingly violate[d] the law."  Id.

Accordingly, the defendants are not entitled to qualified immunity at the Rule 12(b)(6) stage.  Id.  We need not determine at this stage whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff."  See Grider, 618 F.3d at 1257 (quotations omitted).  As the district court noted, evidence may emerge through discovery to show that the officers had arguable probable cause to make the arrest.  And it may be that the officers said none of

11

what Andrews alleged.  But the district court did not err in denying the defendants' motion to dismiss based on the allegations in the complaint at this Rule 12(b)(6) stage.

## F.    Excessive Force against Sergeant Kizzire

"In an excessive force case arising out of an arrest, whether a constitutional violation occurred is governed by the Fourth Amendment's 'objective reasonableness' standard."  Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008).  Among the factors that are "instructive" in determining whether an officer's use of force was objectively reasonable are "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically."  Id. (quotation omitted).  The amount of force used by an officer in carrying out an arrest "must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight."  Lee v. Ferraro, 284 F.3d 1188, 1198 (11th Cir. 2002) (citing Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989)).

A claim of excessive force "presents a discrete constitutional violation relating to the manner in which an arrest was carried out."  Bashir v. Rockdale Cty., Ga., 445 F.3d 1323, 1332 (11th Cir. 2006).  The claim is "independent of

whether law enforcement had the power to arrest" in the first place. Hadley, 526 F.3d at 1329. Accordingly, "where an excessive force claim is predicated solely on allegations the arresting officer lacked the power to make an arrest, the excessive force claim is entirely derivative of, and is subsumed within, the unlawful arrest claim." Bashir, 445 F.3d at 1332. An excessive force claim that is predicated on the unlawfulness of the underlying arrest "fails as a matter of law." Id.

Here, Andrews does not predicate her excessive force claim solely on the allegation that Officer Marshall and Sergeant Kizzire lacked the authority to arrest her. Because her excessive force claim against Kizzire is discrete from her false arrest claims, we discuss the excessive force claim without regard to the propriety of the underlying arrest. See Hadley, 526 F.3d at 1329.

According to the complaint, at the time Andrews was arrested, she was sitting in O'Bryant's truck actually answering the officers' questions, except for the question about her name. She was not fleeing or resisting the officers. She was not asked to get out of the truck. Yet Sergeant Kizzire announced that he was "tired of this," "aggressively pull[ed] Andrews out of the vehicle," "forcefully turn[ed] her around," "slammed [her] against the car door," and "cuff[ed] her hands behind her back." As a result of Sergeant Kizzire's actions, Andrews's right arm swelled to twice its normal size.

13

Applying the <u>Hadley</u> factors and accepting Andrews's version, there was no apparent need or provocation for this alleged degree of force. See <u>Hadley</u>, 526 F.3d at 1329. Andrews had answered some questions except for her name, and was non-threatening. And as a result of Sergeant Kizzire's use of aggressive force, Andrews was injured. These factors all suggest that Sergeant Kizzire's use of force was not objectively reasonable. <u>Id.</u> Under the facts alleged, it would be clear to a reasonable officer that Sergeant Kizzire's conduct was unlawful. See <u>Cottone</u>, 326 F.3d at 1359.

As with Andrews's false arrest claim, facts may emerge in discovery to show that Sergeant Kizzire's use of force was objectively reasonable in light of the totality of circumstances. But under the allegations of the complaint, the district court did not err in denying the motion to dismiss as to the excessive force claim against Kizzire.

## G.    Retaliation against Marshall and Kizzire

A § 1983 claim for retaliation requires a plaintiff to establish that (1) her speech was constitutionally protected, (2) the defendant's retaliatory conduct adversely affected the protected speech, and (3) there is a causal connection between the retaliatory actions and the adverse effect on speech. <u>Bennett v. Hendrix</u>, 423 F.3d 1247, 1250 (11th Cir. 2005). Retaliatory conduct adversely affects protected speech if the conduct "would likely deter a person of ordinary

14

firmness from the exercise of First Amendment rights." Id. at 1254. "[S]ince there is no justification for harassing people for exercising their constitutional rights [the adverse effect] need not be great in order to be actionable." Id. (quotation omitted). However, where the alleged retaliatory conduct is an arrest, the existence of probable cause or arguable probable cause is a complete bar to liability. Dahl v. Holley, 312 F.3d 1228, 1236 (11th Cir. 2002).

The First Amendment "protects a significant amount of verbal criticism and challenge directed at police officers." City of Houston, Tex. v. Hill, 482 U.S. 451, 461, 107 S. Ct. 2502, 2509 (1987). Individuals are free "verbally to oppose or challenge police action without thereby risking arrest." Id. at 462-63, 107 S. Ct. at 2510. Similarly, a person may ask reasonable questions of a police officer without giving rise to probable cause or arguable probable cause for obstruction of justice. Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1139 (11th Cir. 2007).

Regarding the first prong of her retaliation claim, Andrews alleges that she engaged in the following speech: (1) she "advised [Officer Marshall] that she had certain privacy guarantees protected under the U.S. Constitution"; and (2) she told Marshall she was not required to provide identification as a passenger in O'Bryant's truck. When Andrews engaged in this speech, she was not obstructing Officer Marshall from carrying out the traffic stop: she knew that O'Bryant had already given Marshall her name, and that Marshall had already run background

15

checks on her and O'Bryant.  Rather, her assertion of her right to privacy was a criticism and challenge of Officer Marshall's action, and, as such, is protected speech.  Hill, 482 U.S. at 461, 107 S. Ct. at 2509; see Skop, 485 F.3d at 1139.

As to the other two prongs of a retaliation claim, it is obvious that when Andrews was arrested, her protected speech was adversely affected.  Indeed, even the threat of arrest would likely deter a person of ordinary firmness from the exercise of First Amendment rights, at least to some degree.  See Bennett, 423 F.3d at 1254-55.

Accordingly, at this Rule 12(b)(6) stage, Andrews has stated a claim for retaliation under § 1983.  Id. at 1250.  And it would be clear to a reasonable officer that it was unlawful to arrest Andrews for engaging in constitutionally protected speech.  See Cottone, 326 F.3d at 1359.  Therefore, Officer Marshall and Sergeant Kizzire are not entitled to qualified immunity from Andrews's retaliation claim, and the district court did not err in denying their motion to dismiss based on the facts alleged in the complaint.

## III. CONCLUSION

For all the foregoing reasons, we conclude that at this Rule 12(b)(6) stage the district court did not err in denying defendants Officer Marshall and Sergeant Kizzire's motion to dismiss plaintiff Andrews's § 1983 claims on the basis of

16

qualified immunity.  Accordingly, we affirm the district court's denial of the defendants' motion to dismiss.

**AFFIRMED.**