United States Court of Appeals,

Eleventh Circuit.

No. 94-2337.

Gerald WILLIAMSON, Plaintiff-Appellant,

v.

F.H. MILLS, individually and in his capacity as an agent/employee of the Florida Department of Business Regulation; Florida Department of Business Regulation, Defendants-Appellees.

Sept. 27, 1995.

Appeal from the United States District Court for the Northern District of Florida. (No. GCA 93-10032-MMP), Maurice Mitchell Paul, Chief Judge.

Before COX, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Gerald Williamson sued Lieutenant Frederick Mills, an agent of the Florida Department of Business Regulation, Division of Alcoholic Beverages, for violations of Williamson's First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights resulting from Mills's detention of Williamson at Fourth of July festivities in 1991. Concluding that Mills is individually entitled to qualified immunity, the district court granted him summary judgment. Williamson appeals. We reverse and remand.

I. Background

The core facts are essentially undisputed. On July 4, 1991, the Florida Freedom Festival and Parade was held in Tallahassee to honor veterans of the Vietnam War. Williamson, a veteran, was invited to attend. He came to the Festival with his camera, accompanied by several other members of a group called Veterans for Peace. The group set up an information table in the ceremony area

and planned to march under a banner in the parade.

Security was tight because several dignitaries, including Governor Lawton Chiles, were attending the Festival. Among the plainclothesmen and women present were Mills and Elaine Pavan, an agent of the Division of Alcoholic Beverages and Tobacco. A death threat was outstanding against Pavan in connection with her undercover investigation of biker gangs, and Mills was aware of the threat. Several other undercover law officers besides Pavan were in the security force.

During the festivities, Mills noticed that Williamson was taking pictures of some of the undercover officers. Mills knew that a photograph of Pavan would enable a hit man to identify her. He also was aware that photographs of other undercover officers are saleable to organized crime groups, which use such photographs to detect undercover infiltration.[1] Williamson and others in his group, for their part, believed that the plainclothesmen and women were surveilling them too closely, and they feared that the plainclothesmen were members of a subversive group. Williamson was taking photographs of the plainclothesmen to show to Veterans for Peace members who were not attending the Festival. Williamson in fact succeeded in taking, along with a few pictures of the festivities, frontal photographs of several undercover officers, but not of Pavan.

As Williamson and other members of Veterans for Peace walked to Williamson's car to get their parade banner, Mills stopped

---

[1]We now know that Williamson was not taking the photographs for any improper purpose.

Williamson, flashed his laminated badge, and demanded the film from Williamson's camera. Williamson refused, and Mills threatened to arrest him. Williamson asked on what charges, and Mills replied that the charge was threatening the life of a police officer. Williamson still refused to turn over the film, and this colloquy repeated itself several times.

As Williamson finally turned to leave, Mills grabbed Williamson's shoulder, pushed him against a van, and handcuffed one hand. Mills then forced Williamson against a car hood and handcuffed his other hand. As a crowd including Television news cameras began to form, Mills put Williamson in the back of a police van and took him to a nearby parking lot. Mills continued to demand, and Williamson to refuse, the film from Williamson's camera. While in the parking lot, Mills pushed Williamson, still handcuffed, against the police van and tried to take the camera by force. Williamson protested, and Mills again tried to persuade Williamson to surrender the film. Finally, a Tallahassee policeman told Williamson to hand over the film because the camera would be taken when Williamson was arrested, anyway. Williamson agreed to turn over the film. Mills removed the handcuffs. Williamson removed the film from the camera, and Mills gave him five dollars to reimburse him for the cost of the film. The entire encounter lasted thirty or forty minutes.

Williamson sued Mills, the City of Tallahassee, the Florida Department of Business Regulation, and two Tallahassee Police Department officers under 42 U.S.C. § 1983, asserting violation of several constitutional rights. The district court dismissed the

claims against Tallahassee, the Florida Department of Business Regulation, and the officers in their official capacities, holding that the Eleventh Amendment bars these claims. The court granted summary judgment for Mills in his individual capacity based on qualified immunity, focusing on Williamson's false arrest claim. Williamson appeals only the summary judgment for Mills, and he bases his argument only on the Fourth Amendment claim.

II. Issue and Standard of Review

The primary issue on appeal is whether Mills is entitled to summary judgment based on qualified immunity on Williamson's Fourth Amendment claim. We review summary judgments de novo. *Hardin v. Hayes,* 957 F.2d 845, 848 (11th Cir.1992).

III. Discussion

We conclude that Mills does not merit qualified immunity against the Fourth Amendment false arrest claim. An official sued as an individual is entitled to qualified immunity, and therefore summary judgment, if his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances.*" *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1150 (11th Cir.1994) (en banc). "Public officials are not obligated to be creative or imaginative in

drawing analogies from previously decided cases." *Adams v. St. Lucie County Sheriff's Dep't,* 962 F.2d 1563, 1575 (11th Cir.1992) (Edmondson, J., dissenting), *approved en banc,* 998 F.2d 923 (11th Cir.1993). "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Kelly v. Curtis,* 21 F.3d 1544, 1550 (11th Cir.1994) (quoting *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993)).

Even under these stringent standards, Mills is not entitled to qualified immunity from Williamson's claim of false arrest because a reasonable official in Mills's shoes, possessing the information Mills possessed, could not have believed that his conduct comported with the Fourth Amendment. In particular, pre-existing law compels the conclusion that Mills arrested Williamson without probable cause.[2]

The Fourth Amendment permits warrantless arrests if made with

---

[2]The district court determined that Mills's detention had crossed the hazy boundary between an investigative stop (requiring only a reasonable suspicion under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny) and an arrest (requiring probable cause). We agree with the court's analysis—and indeed it goes unchallenged in this appeal—but believe that the court asked the wrong question. The relevant question is not whether the detention amounted to an arrest, but whether precedent compelled a reasonable official in Mills's shoes, possessing the information he possessed, to conclude that his detention of Williamson was an arrest rather than an investigative stop. In a case such as this in which the level of Fourth Amendment protection is a possible issue, determination of the investigative stop-arrest boundary necessarily enters into the legal analysis we ascribe to the defendant to determine whether "what [he] is doing violates federal law *in the circumstances.*" *Lassiter,* 28 F.3d at 1150. *See United States v. Espinosa-Guerra,* 805 F.2d 1502, 1506 (11th Cir.1986); *United States v. Berry,* 670 F.2d 583, 591 (5th Cir. Unit B 1982) (en banc).

probable cause. *E.g., United States v. Espinosa-Guerra,* 805 F.2d 1502, 1506 (11th Cir.1986). "A law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Von Stein v. Brescher,* 904 F.2d 572, 578 (11th Cir.1990). Critical to probable cause is some information identifying the subject of the arrest as the perpetrator of the suspected criminal conduct. *See, e.g., Wong Sun v. United States,* 371 U.S. 471, 480-482, 83 S.Ct. 407, 413-414, 9 L.Ed.2d 441 (1963).

Qualified immunity shields Mills against a claim of arrest without probable cause if a "reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (second brackets in original) (quoting *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987)). "Even law enforcement officials who "reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Id.* (quoting *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039). As this court has put it, to enjoy qualified immunity Mills need only have had *arguable* probable cause to arrest Williamson. *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1558 (11th Cir.1993).

An officer in Mills's shoes could not have reasonably concluded that he had probable cause to arrest Williamson. It is

true that Mills had reason to believe criminal activity may have been afoot. He knew of the death threats against Pavan. Mills also knew of the recent convictions of the makers of another death threat against Pavan, and this could reasonably have led Mills to believe that the current death threats were real. He knew that photographs of Pavan could be useful in carrying out any death threats. Moreover, Mills was aware that criminal organizations prize photographs of undercover officers because of the help the photos give them in weeding out law enforcement infiltration.

What was fatally missing from Mills's knowledge, however, was a link between the suspected criminal activity and Williamson. *Cf. Swint v. City of Wadley, Ala.,* 51 F.3d 988, 996 (11th Cir.1995) (holding that no arguable probable cause existed to raid a nightclub when law enforcement officials lacked any information that employees, owners, or patrons of the club were involved in suspected drug activity). Taking photographs at a public event is a facially innocent act. The mere fact that Williamson's photographs *could* have been used for unlawful activity—such as carrying out a death threat against Pavan—is not enough to establish even arguable probable cause for Williamson's arrest unless Mills had some datum to connect Williamson to the death threats or other crime. Not only did Mills lack this information; the record discloses no effort at any time to find out who Williamson was, check his criminal record, or otherwise find out if Williamson was connected to biker gangs or organized crime.

Because Mills lacked even arguable probable cause to arrest Williamson, Mills was not entitled to qualified immunity against

Williamson's claim of false arrest. The district court concluded to the contrary that Mills did merit qualified immunity, and thus it did not reach the merits of the Fourth Amendment claim. Rather than considering the claim ourselves, we remand for the district court to address the merits.

The district court's opinion treats Williamson's Fourth Amendment excessive force claim as a discrete claim, and concludes that Mills is also due summary judgment on this claim based upon qualified immunity. On appeal, Williamson does not argue that the force used was more than that reasonably necessary to effect the arrest. He argues that "[t]here was no need for *any* force as the force was used to accomplish an unlawful arrest." (Appellant's Br. at 15) (emphasis added). In this case, damages recoverable on Williamson's false arrest claim include damages suffered because of the use of force in effecting the arrest. *See Hamm v. Powell,* 874 F.2d 766, 770 (11th Cir.1989). Under these circumstances, Williamson's excessive force claim is subsumed in his false arrest claim, and thus we find no reversible error in the district court's grant of summary judgment on the excessive force claim as a discrete claim.

IV. Conclusion

Because the law was clearly established that Mills's actions, based on the facts at his disposal, violated Williamson's Fourth Amendment rights not to be arrested without probable cause, Mills is not entitled to qualified immunity against this claim. We therefore REVERSE the district court's grant of summary judgment in Mills's favor on the Fourth Amendment claim of false arrest and

REMAND for further proceedings. The judgment is otherwise AFFIRMED.

AFFIRMED in part; REVERSED and REMANDED in part.