[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-12728
Non-Argument Calendar

_____

D.C. Docket No. 8:10-cv-01784-JDW-TBM

BENJAMIN DAKER,
BARBARA S. DAKER,

Plaintiffs - Appellants,

versus

BRAD STEUBE,
as Sheriff of Manatee County, Florida,
JASON RILEY,

Defendants - Appellees,

MANATEE COUNTY SHERIFF'S OFFICE,
MICHAEL RUSHING,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 27, 2013)

Before HULL, JORDAN and KRAVITCH, Circuit Judges.

PER CURIAM:

Benjamin and Barbara Daker sued Brad Steube, Sheriff of the Manatee County Sheriff's Office, and deputy sheriff Jason Riley,[1] asserting a number of claims under 42 U.S.C. § 1983 and Florida state law stemming from an incident in which Riley went to the Dakers' house to arrest their grandson and ultimately arrested Mr. Daker. The Dakers' case went to a jury trial. During the trial, the district court granted the officers qualified immunity or judgment as a matter of law on some claims. For the remaining claims, the jury found in favor of the officers. The Dakers appeal many of these adverse dispositions. For the reasons set forth below, we affirm.

## I.

Although the Dakers and officers argue over many of the details in this case, they agree on the gist of the story. Deputy sheriff Riley obtained a warrant for the arrest of Benjamin Sutherland, the Dakers' grandson. The warrant listed the Dakers' address as Sutherland's residence, so Riley went to that address to make the arrest. When he arrived, he spoke with Mr. Daker, who said Sutherland was not home. Riley nonetheless attempted to enter the Dakers' home to look for

---

[1] The Dakers also originally sued the Manatee County Sheriff's Office and sheriff deputy Michael Rushing. Both of these parties have been dismissed and are not part of this appeal.

Sutherland, Mr. Daker resisted, and Riley ultimately arrested Mr. Daker. Riley went inside and searched for Sutherland, but did not find him.

Based on these events, the Dakers sued. Their complaint contained a multitude of claims against several parties, only some of which remained live at the start of the jury trial.[2] The following claims remained at that point: Fourth Amendment claims under § 1983 by the Dakers for unlawful entry (Count 1) and unreasonable search (Count 2) against Riley; a Fourth Amendment excessive-force claim under § 1983 by Mr. Daker against Riley for the manner in which Riley handcuffed and arrested Mr. Daker *and* for Riley's alleged force used immediately after the arrest (Count 3); a false-arrest claim under Florida law by Mr. Daker against Steube (Count 5); and a malicious-prosecution claim under Florida law by Mr. Daker against Riley for charges based on Mr. Daker's alleged obstruction *and* battery on a police officer (Count 6).[3] At the conclusion of trial, the district court granted the officers' motion for judgment as a matter of law on Count 5 and on the obstruction-based malicious-prosecution claim in Count 6. The court also granted Riley qualified immunity on the handcuffing and arrest portion of Count 3. A jury

---

[2] The Dakers do not challenge the judgment that disposed of some of their claims prior to trial.
[3] The Dakers also made claims for unconstitutional custom or policy (Count 4), battery (Count 7), and intentional infliction of emotional distress (Count 8). The district court granted the officers judgment as a matter of law on Counts 4 and 8, and the jury found against Mr. Daker on Count 7. The Dakers do not appeal these counts, and their dispositions are not relevant to this appeal.

3

decided the remaining claims, ultimately finding in favor of the officers on each count.  The Dakers moved for a new trial, which the district court denied.

The Dakers appeal only some of these adverse determinations.  They appeal the jury's verdict on Counts 1 and 2.  Mr. Daker appeals the grant of qualified immunity on the handcuffing and arrest portion of his Count 3 excessive-force claim, but does not appeal the jury's verdict on the post-arrest portion of that count.  Mr. Daker also appeals the district court's judgment as a matter of law on Count 5.  And he appeals the court's judgment as a matter of law on the obstruction-based malicious-prosecution claim in Count 6, although he does not appeal the jury verdict in favor of Riley on the battery portion of that count.  We discuss each portion of the Dakers' appeal in turn.

## II.

Mr. Daker appeals the district court's grant of judgment as a matter of law to the officers on his state law false-arrest and malicious-prosecution claims.  We review *de novo* the district court's grant of judgment as a matter of law under Federal Rule of Civil Procedure 50, applying the same legal standard as the district court.  *Pickett v. Tyson Fresh Meats, Inc.*, 420 F.3d 1272, 1278 (11th Cir. 2005).  Under Rule 50, a court should grant a motion for judgment as a matter of law if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ."  Fed. R. Civ. P. 50(a)(1).

4

We review all evidence in the record and draw all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-50 (2000). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 150 (internal quotation marks omitted).

Mr. Daker's false-arrest and malicious-prosecution claims turn on whether his arrest was supported by probable cause. S*ee Mailly v. Jenne*, 867 So. 2d 1250, 1251 (Fla. Dist. Ct. App. 2004) ("Probable cause is an affirmative defense to a false arrest claim."); *Durkin v. Davis*, 814 So. 2d 1246, 1248 (Fla. Dist. Ct. App. 2002) (requiring plaintiff asserting malicious-prosecution claim to establish "an absence of probable cause for the original proceeding"). He contends that the district court erred in granting judgment as a matter of law in favor of the officers on these claims because reasonable jurors might have reached different conclusions on whether Riley had probable cause to arrest Mr. Daker for obstruction. Under Florida law, a person commits a misdemeanor for which an arrest is warranted when he (1) "resist[s], obstruct[s], or oppose[s]" any officer (2) "in the lawful execution of any legal duty." Fla. Stat. § 843.02. This includes any "attempt to oppose or to obstruct the officer." *Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1558-59 (11th Cir. 1993) (applying § 843.02).

"[T]he standard for determining the existence of probable cause is the same under both Florida and federal law . . . ." *Rankin v. Evans*, 133 F.3d 1425, 1433 (11th Cir. 1998). Probable cause exists when "the facts and circumstances within the officer's knowledge . . . would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995). When the facts are not in dispute, whether an officer had probable cause to make an arrest is a question of law. *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990).

We conclude that the district court correctly found, as a matter of law, that Riley had probable cause to arrest Mr. Daker and that Mr. Daker's false-arrest and malicious-prosecution claims therefore necessarily failed. Mr. Daker argues that Florida law and federal common law permit him to resist, without violence, an unlawful entry into his home and an arrest. But, as the district court correctly concluded, Riley's entry and limited search[4] of the Dakers' home was lawful; accordingly, Mr. Daker's resistance was not permitted, and was instead a crime for which he was properly arrested.

First, Riley was lawfully executing a legal duty when he entered and conducted a limited search of the Dakers' home. *See* Fla. Stat. § 843.02. "[F]or

---

[4] The Dakers do not argue that Riley did anything more than briefly search their home for Sutherland's presence.

Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). And "[w]hile the ultimate objective of an arrest entry is an arrest, the arrest can only be effected if the subject is first found and thus a search is a necessary factual prerequisite to the possible arrest." *United States v. Cravero*, 545 F.2d 406, 416 (5th Cir. 1977).[5] A permissible entry and limited search requires (1) "a reasonable belief that the location to be searched is the suspect's dwelling," and (2) "reason to believe that the suspect is within the dwelling." *United States v. Bervaldi*, 226 F.3d 1256, 1263 (11th Cir. 2000) (internal quotation marks omitted). Undisputed evidence at trial showed Riley's belief that Sutherland resided at the Dakers' address was reasonable. The warrant for Sutherland's arrest listed the Dakers' address. Before going to the home to execute the warrant, Riley checked Sutherland's driver's license address, which was the Dakers' address. Riley also checked recent booking records for Sutherland, which returned a recent booking record noting the Dakers' address as Sutherland's residence.[6]

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), we adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.
[6] The Dakers point out that Sutherland was once arrested at a different location, but this is not inconsistent with Riley's conclusion that Sutherland resided at the Dakers' address.

Further, based on this information and information he obtained at the Dakers' home, Riley had reason to believe Sutherland was inside. Riley testified that he saw someone other than Mr. Daker in the home when the door opened, but was not sure who it was. When he asked, twice, who was home with Mr. Daker, rather than telling Riley that Mrs. Daker was home, Mr. Daker repeated, "I told you already, he's in Washington." The Dakers argue that, when Mr. Daker told Riley that Sutherland was out of town, Riley had no reason to disbelieve that statement, so he thereafter lacked a reasonable belief that Sutherland was at the residence. But based on his observations at the home, Mr. Daker's uncooperative nature, and the facts he ascertained before service showing the Dakers' home was Sutherland's residence, it was reasonable for Riley to disbelieve Mr. Daker. For these reasons, Riley was lawfully executing a legal duty by entering and searching the Dakers' residence to locate and arrest Sutherland.

As to the second element of the Florida obstruction statute, undisputed evidence showed that Daker was obstructing, or at least attempting to obstruct, Riley's execution of his duty to serve Sutherland with an arrest warrant. *See* Fla. Stat. § 843.02. According to Riley's police report, entered into evidence at trial, Riley advised Mr. Daker that he had to check inside the house to make sure Sutherland was not home. Mr. Daker said, "do you have a search warrant, because if not your [sic] not coming in." Riley told Mr. Daker that he did not need a search

8

warrant to look for Sutherland because he had a warrant for Sutherland's arrest. Mr. Daker, according to the police report and his own complaint, then "put his arms up to block the doorway." This conduct shows that Mr. Daker verbally and physically attempted to obstruct Riley as Riley sought to locate and arrest Sutherland. Riley therefore had probable cause to arrest Mr. Daker for obstruction. *See Williamson*, 65 F.3d at 158.

Riley's probable cause to arrest Mr. Daker defeats Mr. Daker's claims for false arrest and malicious prosecution. *See Mailly*, 867 So. 2d at 1251; *Durkin*, 814 So. 2d at 1248. The district court was accordingly correct to grant judgment as a matter of law in favor of Riley and Steube on these claims.

### III.

Mr. Daker also argues that the district court erred in granting Riley qualified immunity on Mr. Daker's excessive-force claim arising from the manner in which he was handcuffed and arrested. We review *de novo* a district court's grant of qualified immunity, resolving all issues of material fact in favor of the nonmoving party. *Bryant v. Jones*, 575 F.3d 1281, 1294 (11th Cir. 2009). "To be eligible for qualified immunity, the official must first establish that he was performing a 'discretionary function' at the time the alleged violation of federal law occurred." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). If the official makes this showing, "the plaintiff bears the burden of demonstrating that the

official is not entitled to qualified immunity." *Id.* To do so, the plaintiff must show that the official committed a constitutional violation in a way that was clearly established at the time. *Id.*

Mr. Daker makes two arguments that Riley was not entitled to qualified immunity. He first contends that the district court improperly based its construction of his excessive-force claim on his separate false-arrest claim, and that claim – one based on state law – was not one for which Riley could legally be entitled to qualified immunity. *See Andreu v. Sapp*, 919 F.2d 637, 640 (11th Cir. 1990) ("Qualified immunity is a defense to federal causes of action and does not protect officials from claims based upon state law."). The only support Mr. Daker has for this assertion, however, is the district court's use of the word "arrest" when ruling on the qualified-immunity issue. Read in context, it is clear that the district court was not confusing Mr. Daker's false-arrest claim with his excessive-force claim, but rather was distinguishing the grant of qualified immunity on the handcuffing and arrest from the denial of qualified immunity on the alleged excessive force after the arrest. There was no error in this reasoning.

Second, Mr. Daker argues that the district court was wrong on the merits of Riley's qualified-immunity defense. He contends Riley committed a constitutional violation in arresting him because Riley lacked probable cause to do so. And no amount of force is justified in the absence of probable cause. But, for the reasons

set forth above, the district court was correct to conclude Riley had probable cause to arrest Mr. Daker.[7]  Accordingly, the district court did not err in granting Riley qualified immunity.

## IV.

Finally, the Dakers challenge the adverse jury verdicts on their Fourth Amendment claims for unlawful entry and unreasonable search.  Specifically, they contend that the district court's jury instructions misled the jury into thinking Mr. Daker's arrest was lawful as a matter of law and, therefore, that Riley's entry into and search of the Dakers' home was also, necessarily, lawful.  This argument misses the mark.  Even assuming the court's instructions were confusing, as we have already held, Riley had probable cause as a matter of law to enter and conduct a limited search based on the arrest warrant for Sutherland.  And the Dakers do not claim he exceeded the scope of that limited authority.  Thus, the jury could not have found for the Dakers on these claims and any error the court may have made in instructing the jury is harmless.  *See Spakes v. Broward Cnty. Sheriff's Office*, 631 F.3d 1307, 1310 (11th Cir. 2011) (holding a court's erroneous jury instruction harmless because the jury's conduct reflected a correct application of the law).

## V.

---

[7] Because Daker does not assert that the force Riley used was excessive under clearly established law provided there was probable cause to arrest, he has waived any argument that it was. *See Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989).

11

Accordingly, we affirm the judgments in favor of the officers.

**AFFIRMED.**