[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10639
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-01230-TCB

WAYNE LOWE, SR.,
MONETTE LOWE,

Plaintiffs - Appellants,

versus

CHARLENE SMITH,
JOHN BRUCE,
PAUL BERNICHON,
JUSTIN LYKINS,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(December 21, 2018)

Before JILL PRYOR, HULL and JULIE CARNES, Circuit Judges.

PER CURIAM:

This case is about a regrettable incident likely caused by a misunderstanding.  Wayne Lowe, Sr. and Monette Lowe sued officers of the City of Conyers, Georgia Police Department for unlawful arrest, excessive use of force, and illegal search under federal law, as well as related state law claims.  The district court granted summary judgment to the defendant officers on the federal law claims and dismissed the state law claims without prejudice.  The Lowes appeal the district court's order.  After careful review of the entire record, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

We construe the facts in the light most favorable to the Lowes, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014), and set them out in detail because they are crucial to our later legal analysis.  The Lowes' ten-year-old son N.L. called 911 and, according to an audio recording of the call, informed the dispatcher, "My dad is killing my brother."  Doc. 91, Ex. 3, 3:24-3:26.[1]  On the phone, N.L. sounded hysterical, and the dispatcher mistook the word "brother" for "mother."  As a result, the officers dispatched to the Lowes' home believed they were going there to investigate a possible homicide of N.L.'s mother, Monette Lowe.  As it turned out, Ms. Lowe was away at work during this entire episode. N.L.'s older brother and sister had been inside the house during the 911 call, but they left before any of

---

[1] Citations in the form "Doc. #" refer to entries on the district court docket.

the police officers arrived, leaving only Mr. Lowe and N.L. in the house for what transpired after the officers arrived.

Cameras and microphones in the vehicles driven by Conyers Police Department Officers Charlene Smith, John Bruce, and Justin Lykins recorded the events described below.  Although the camera footage does not reveal a visual picture of what happened at the Lowes' door or inside their home, the recordings do include audio of the incident.

Officer Smith arrived on the scene first and found the house "relatively quiet."  Doc. 78 at 8.  She knocked on the Lowes' door, stated that she was with the Conyers Police Department, and ordered Mr. Lowe to open the door.  Mr. Lowe opened the door, not all the way, but enough to show his entire body. Officer Smith observed that he appeared sweaty.

Officer Smith commanded, "Have your wife come out."  Doc. 91, Ex. 5 (Officer Smith Video), 16:49:22-16:49:23.  Mr. Lowe informed her that his wife was at work.  Officer Smith then ordered Mr. Lowe to step outside, but Mr. Lowe refused, stating, "Why?  I didn't call you, and I don't have to.  Tell me what you want." *Id.* at 16:49:30-16:49:33.  Officer Smith answered that the police had "received a 911 call from this location." *Id.* at 16:49:34-16:49:35.  She inquired, "Is there a young person here?", *id.* at 16:49:37-16:49:38, at which point Mr. Lowe opened the door all the way and informed her, "I got kids," *id.* at 16:49:39.

3

Through the doorway, Officer Smith was able to see N.L., who appeared uninjured. Officer Smith twice commanded Mr. Lowe, "I need you to step out," but Mr. Lowe refused to do so and argued with Officer Smith, saying, "I don't have to step out, because I didn't call you, I own this house, and you can't make me do that." *Id.* at 16:49:44-16:49:53.

Officer John Bruce arrived at the Lowes' door about one minute after Officer Smith knocked on it. Three times, Officer Bruce ordered Mr. Lowe to "[c]ome outside." *Id.* at 16:50:19-16:50:22. After Mr. Lowe refused, Officer Bruce told him, "You're out here fighting with your wife. You're going to get Tased." *Id.* at 16:50:23-16:50:24. Mr. Lowe yelled in response, "My wife is at work, motherfuckers!" *Id.* at 16:50:24-16:50:26. During much of his interaction with Officers Smith and Bruce leading up to this point, Mr. Lowe was, in his own words, "[a]ggravated," Doc. 81 at 125, and he spoke to the officers in a belligerent manner.

Mr. Lowe contends that he never made any move toward the officers. Yet immediately after he swore at them, a scuffle ensued in which Officer Bruce violently pushed the front door even farther open, elbowed Mr. Lowe in the side of the head, and grabbed his shoulders. Officer Smith reached under Officer Bruce's arm and discharged her Taser once onto Mr. Lowe's abdomen. The scuffle lasted about thirty seconds and ended with Officer Bruce handcuffing Mr. Lowe.

4

During the scuffle, Mr. Lowe yelled a couple of times, "I didn't do anything!" Doc. 91, Ex. 5 (Officer Bruce Video), 16:50:34-16:50:37. N.L., who witnessed the entire scene from inside the house, also yelled, "He didn't do anything!" *Id.* at 16:50:37-16:50:38, 16:50:43-16:50:44. Officer Bruce responded, "That's what you get for pushing me," *id.* at 16:50:43-16:50:44, and "That's what you get for jumping up—bumping up to a police officer," *id.* at 16:51:12-16:51:14. After handcuffing Mr. Lowe, Officer Bruce immediately searched the first floor of the house but found no other person.

Immediately after Mr. Lowe was handcuffed, Officer Paul Bernichon arrived on the scene and entered the Lowes' home. For the next five minutes, Officers Smith, Bruce, and Bernichon attended to Mr. Lowe, while Officer Bruce argued with Mr. Lowe over what had just taken place. In addition, either Officer Bruce or Officer Bernichon radioed that there had been a Taser deployment, and Officer Bruce read Mr. Lowe his *Miranda* warnings.

About five minutes after the scuffle ended, Officer Justin Lykins, the supervising officer, arrived and also entered the home. Officer Bruce continued arguing with Mr. Lowe. About a minute later, Officers Bernichon and Lykins escorted Mr. Lowe, who was still handcuffed, out of the house to one of the police vehicles.

While Officers Bernichon and Lykins were outside with Mr. Lowe, Officer Bruce asked Officer Smith and N.L. about the 911 call and Officer Smith's interaction with Mr. Lowe before he arrived. Officer Lykins reentered about a minute later and then spoke with Officers Smith and Bruce and N.L. for about four and half minutes about the circumstances of the 911 call and what had happened before he arrived.[2] N.L. informed the officers that he had reported to the 911 dispatcher that "someone was being killed." Doc. 91, Ex. 7 (Officer Lykins Video), 16:58:59-16:59:00.[3] Officer Bruce replied, "But you told us that it was— he was beating up your mom." *Id.* at 16:59:02-16:59:05. Then N.L. explained, "Not my mom; you probably heard me wrong." *Id.* at 16:59:05-16:59:07.

Toward the end of the officers' conversation with N.L., which was approximately 12 minutes after Mr. Lowe was Tased, Officer Lykins said, "Let me check upstairs to see if there's any signs of violence or something upstairs." *Id.* at 17:01:13-17:01:17. Officer Lykins proceeded to check the upstairs of the house, where he found no one and no signs of violence.

The Lowes filed a complaint alleging three Fourth Amendment claims under 42 U.S.C. § 1983. Mr. Lowe claimed that (1) Officers Smith and Bruce unlawfully arrested him and (2) used excessive force against him. Together, Mr. and Ms.

---

[2] Officer Bernichon stayed with Mr. Lowe near one of the police vehicles until an ambulance arrived.

[3] The timestamps in Officer Lykins's video appear to be approximately one minute and forty-five seconds behind the timestamps in Officer Smith's and Officer Bruce's videos.

6

Lowe claimed that (3) Officers Smith, Bruce, Bernichon, and Lykins conducted an illegal search of their home.  Mr. Lowe also alleged two Georgia state law claims for false imprisonment and battery against Officers Smith and Bruce.[4]  The officers moved for summary judgment on the grounds that they are entitled to qualified immunity from suit on the federal claims and official immunity from suit on the state law claims.  The district court granted summary judgment to the defendants on the federal law claims based on qualified immunity and declined to exercise supplemental jurisdiction over the state law claims, dismissing them without prejudice.  The Lowes timely appealed.

## II.    STANDARDS OF REVIEW

We review *de novo* a district court's entry of summary judgment based on qualified immunity.  *Bashir v. Rockdale Cty.*, 445 F.3d 1323, 1326 (11th Cir. 2006).  We review for abuse of discretion a district court's dismissal without prejudice of pendent state law claims.  *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 420 (11th Cir. 1984).

We view the facts in the light most favorable to the nonmoving parties, the Lowes, and we also draw all reasonable inferences in their favor.  *Glasscox v. City of Argo*, 903 F.3d 1207, 1212 (11th Cir. 2018).  That is, "[e]ven where the parties agree on the facts, if reasonable minds might differ on the inferences arising from

---

[4] Ms. Lowe later was added as a party-plaintiff, and six original defendant-officers have been dismissed from the case.

7

undisputed facts," we must draw those inferences in favor of the Lowes and deny summary judgment. *Id.* (internal quotation marks omitted).  In contrast, when the record reveals no genuine dispute of material fact, the movant is entitled to judgment as a matter of law, and we must grant summary judgment.  *Id.* at 1212-13; *see also* Fed. R. Civ. P. 56(a).

## III.    DISCUSSION

We address first the Lowes' federal law claims and then Mr. Lowe's state law claims.  Regarding Mr. Lowe's unlawful arrest claim, we affirm the district court's grant of summary judgment to Officers Smith and Bruce based on qualified immunity, although on a different ground.  *See Bonanni Ship Supply, Inc., v. United States*, 959 F.2d 1558, 1561 (11th Cir. 1992).  Regarding Mr. Lowe's excessive force claim, we conclude that Mr. Lowe has abandoned any discrete excessive force claim, so we affirm the district court's grant of summary judgment to Officers Smith and Bruce, again on a different ground.  *See id.*  Regarding the Lowes' illegal search claim, we affirm the district court's grant of summary judgment to Officers Smith, Bruce, Bernichon, and Lykins based on qualified immunity.  Lastly, we affirm the district court's dismissal without prejudice of Mr. Lowe's state law claims.

We begin with the Lowes' federal law claims, on which the defendants assert qualified immunity.  Government officials asserting qualified immunity bear

8

the initial burden of showing they were "acting within [their] discretionary authority." *Glasscox*, 903 F.3d at 1213 (internal quotation marks omitted). The Lowes do not dispute that the officers were acting under their discretionary authority. The burden therefore shifts to the Lowes to demonstrate that "(1) the defendant[s] violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.* (internal quotation marks omitted).

## A.  Officers Smith and Bruce Did Not Violate Mr. Lowe's Fourth Amendment Right Against Unlawful Arrest, and Even If They Did, the Violation Was Not Clearly Established.

Under the Fourth Amendment, officers may make warrantless arrests if they have probable cause to believe that the person to be arrested has committed a crime. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Even when the officer has probable cause to believe a person has committed a crime, however, warrantless arrests inside a home are "presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). Nevertheless, an in-home warrantless arrest may still be reasonable under the Fourth Amendment if it comes within an exception to the warrant requirement. *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). One such exception is for "exigencies of the situation [that] make the needs of law enforcement so compelling that the warrantless [entry] is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 393-

9

94 (1978) (internal quotation marks omitted).  More specifically, to invoke the exigent circumstances exception, officers must have "probable cause to believe that exigent circumstances exist."  *Smith v. LePage*, 834 F.3d 1285, 1293 (11th Cir. 2016).  Here, we conclude that Officers Smith and Bruce had probable cause to believe that Mr. Lowe had committed a crime and that exigent circumstances justified their entry into his home to make a warrantless arrest.  Therefore, we hold that their actions did not violate the Fourth Amendment.  But even if their actions did violate the Fourth Amendment, they did not violate clearly established law.

Officers Smith and Bruce argue that they had probable cause to arrest Mr. Lowe for obstructing their investigation into a possible homicide.  We agree.  Georgia's obstruction statute makes it a crime to "knowingly and willfully obstruct[] or hinder[] any law enforcement officer . . . in the lawful discharge of his or her official duties."  O.C.G.A. § 16-10-24(a).  Mr. Lowe thrice refused to step outside the home so that the officers could investigate the circumstances of a 911 call that a child's father was "killing" his "mother."  Doc. 91, Ex. 3, 3:24-3:26.  These facts, viewed in the light most favorable to Mr. Lowe, are sufficient to support probable cause for the officers to believe that Mr. Lowe was committing the crime of obstruction by preventing the officers from looking for the victim.

We also conclude that the exigent circumstances exception to the Fourth Amendment's warrant requirement applied here.  "[E]mergency situations

10

involving endangerment to life fall squarely within the exigent circumstances exception." *United States v. Holloway*, 290 F.3d 1331, 1337 (11th Cir. 2002). The substance of the 911 call conveyed to Officers Smith and Bruce gave them "probable cause to believe that exigent circumstances exist[ed]," that they needed to enter the Lowes' home immediately to ascertain Ms. Lowe's safety, and that they could do so only if they arrested Mr. Lowe, who was obstructing their entry into the home. *Smith*, 834 F.3d at 1293. With probable cause that Mr. Lowe was committing a crime and that an emergency was at hand inside the Lowes' home, Officers Smith and Bruce did not violate the Fourth Amendment in making an in-home warrantless arrest of Mr. Lowe.[5]

---

[5] The district court elided the distinction between probable cause supporting a warrantless arrest and exigent circumstances supporting a warrantless entry into a home that precedes an arrest. The district court quoted from *Holloway*, in which we stated that, "in an emergency, the probable cause element may be satisfied where officers reasonably believe a person is in danger." *Holloway*, 290 F.3d at 1338; *see also Roberts v. Spielman*, 643 F.3d 899, 905 (11th Cir. 2011) (quoting *Holloway*). But *Holloway*'s statement refers to the probable cause necessary to support a warrantless *search*, not a warrantless *arrest*. In an emergency situation, the whole purpose of the search is to locate victims and prevent further injury at the address to which the 911 caller refers the police. Thus, as long as the officer has probable cause to believe an emergency is at hand, a warrantless entry and search of reasonable scope are allowed. *Smith*, 834 F.3d at 1293.

The purpose of the warrantless arrest is different: the arrest incapacitates a person committing a crime. If Mr. Lowe had cooperated with the officers' commands to step outside, they would have lacked probable cause that he was committing the crime of obstruction, and therefore they would have lacked authority to arrest him for that crime. But the emergency still would have given rise to an exigent circumstance justifying a warrantless entry into his home (and a subsequent search to locate the exact site of the emergency and any victims).

Reading *Holloway* incorrectly, the district court undertook only half of the probable cause analysis in concluding that the officers had probable cause to arrest Mr. Lowe (or that they were at least entitled to qualified immunity on this claim). The district court determined that "the officers had probable cause to believe that Monette Lowe was in serious danger inside the

11

Mr. Lowe cites *United States v. Timmann*, in which we observed that our Court and the Supreme Court usually point to "indicia of an urgent, ongoing emergency, in which officers have received emergency reports of an ongoing disturbance, arrived to find a chaotic scene, and observed violent behavior, or at least evidence of violent behavior" in holding that the exigent circumstances exception applied. 741 F.3d 1170, 1179-80 (11th Cir. 2013) (discussing cases, including *Stuart*, 547 U.S. at 398, and *Michigan v. Fisher*, 558 U.S. 45 (2009)); *see also Smith*, 834 F.3d at 1293. In contrast, upon Officer Smith's arrival, she observed that the scene was, in her words, "relatively quiet," Doc. 78 at 8, a far cry from "chaotic," *Timmann*, 741 F.3d at 1179.

Nevertheless, Officers Smith and Bruce were responding to a 911 call about someone being killed, and the situation still presented "the need for a prompt assessment" of, at best, "hurried and incomplete" and "ambiguous information concerning potentially serious consequences"—a homicide. *Holloway*, 290 F.3d at 1339 (internal quotation marks omitted). The ambiguous information included

house." Doc. 98 at 21. Having identified the emergency, the district court apparently concluded that the probable cause element was "satisfied." *Holloway*, 290 F.3d at 1338. Yet the probable cause to believe Ms. Lowe was in serious danger supported only a warrantless *entry* into the Lowes' home to search for Ms. Lowe (or another injured person). The district court failed to evaluate whether the officers had probable cause to believe that Mr. Lowe had committed or was committing a *crime* (or whether "arguable probable cause" existed to support a grant of qualified immunity, *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997)). Without that second half of the analysis, the district court erred in granting summary judgment to the defendants on Mr. Lowe's unlawful arrest claim. The district court's error is of no moment, however, because our *de novo* review leads us to the same outcome. *Bonanni*, 959 F.2d at 1561.

uncertainty about Ms. Lowe's safety, Mr. Lowe's refusal to follow the officers' orders to step outside, his sweaty appearance, and his belligerent and "[a]ggravated" demeanor.  Doc. 81 at 125.  Moreover, "[o]fficers do not need ironclad proof of a likely serious, life-threatening injury to invoke the emergency aid exception." *Fisher*, 558 U.S. at 49 (internal quotation marks omitted).  Based on their understanding of the substance of the 911 call, Mr. Lowe's refusal to step outside,[6] and the ambiguous information they found at the scene, Officers Smith and Bruce had "probable cause to believe that exigent circumstances exist[ed]" and that they needed to arrest Mr. Lowe to remove him from the entryway to determine whether Ms. Lowe was hurt inside the house.  *Smith*, 834 F.3d at 1293.[7]

Mr. Lowe also argues that, after he informed Officer Smith that his wife was at work, Officer Smith or Officer Bruce should have asked the dispatcher to call Ms. Lowe to check whether she was all right.  Yet doing so would defeat the

---

[6] To be clear, without a warrant or an exception to the warrant requirement—for example, consent or exigent circumstances—police may not compel people to permit entry to their homes or to step out of their homes. *See Payton*, 445 U.S. at 586.  When an officer explicitly states that she is responding to a 911 emergency call, however, the right of privacy must yield to the officer's need to locate and assist the person believed to be seriously injured or threatened with serious injury—which is the very reason for the exigent circumstances exception. *See Stuart*, 547 U.S. at 403.

[7] Mr. Lowe also cites the nonbinding case of *Rainwater v. City of Hogansville*, in which the district court concluded that police officers responding to a 911 call violated the plaintiff's Fourth Amendment rights by forcing their way into her home, knocking her down, and handcuffing her.  Order at 4, 9, *Rainwater v. City of Hogansville*, No. 3:10-cv-35-TCB (N.D. Ga. Mar. 29, 2013).  But one of the key differences between *Rainwater* and this case is that Ms. Rainwater "indicated her willingness to come outside and speak with" the officers, *id.* at 10, whereas Mr. Lowe repeatedly refused the officers' commands for him to step outside. *Rainwater* therefore fails to lend even persuasive authority to this case.

purpose of the 911 system: "[i]f law enforcement could not rely on information conveyed by . . . 911 callers, their ability to respond effectively to emergency situations would be significantly curtailed." *Holloway*, 290 F.3d at 1339; *see also Smith*, 834 F.3d at 1293 (declining to impose duty to investigate further whether "circumstances were exigent before entering . . . because it would be contrary to the core purpose of the exigent circumstances exception," *i.e.*, "to allow swift police action during an emergency"). The "business of policemen . . . is to *act*, not to speculate or meditate on whether the report is correct." *Holloway*, 290 F.3d at 1340 (internal quotation marks omitted). "The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger . . . the lives of others. Speed here was essential . . . ." *Warden v. Hayden*, 387 U.S. 294, 298-99 (1967). Just as officers need not seek out "ironclad" proof that an emergency really does exist when they receive a 911 call about a homicide in progress, *Fisher*, 558 U.S. at 49, they need not affirmatively seek out evidence to *dis*prove that an emergency is ongoing.[8]

In addition, Mr. Lowe argues that the officers could not reasonably have believed that Ms. Lowe was injured inside the house because they were able to observe through the doorway that N.L. was uninjured and relatively calm. But this

---

[8] Of course, not all 911 calls are created equal. We do not decide what duties police have in responding to 911 calls that suggest no emergency. What matters is that the substance of the call bears indicia of an emergency, not the fact that the police received the information through the 911 dispatch system.

14

argument fails because a reasonable officer could have believed that Mr. Lowe had more than one child.  Indeed, Mr. Lowe had informed Officer Smith that he had "kids," plural.  Doc 91, Ex. 5 (Officer Smith Video), 16:49:39.  Officers Smith and Bruce did not know at the time they arrested Mr. Lowe that N.L. was the child who had called 911.  It would have been reasonable for them to believe that another child had called 911 because someone was hurt inside the home, unbeknownst to N.L.

We have already concluded that Officers Smith and Bruce did not violate Mr. Lowe's Fourth Amendment right to be free from an unlawful arrest because the officers had probable cause to believe that he was committing a crime and that an emergency justified their warrantless entry to effect his arrest.  Even if Officers Smith and Bruce did violate Mr. Lowe's Fourth Amendment right, though, we hold that they are entitled to qualified immunity on this claim.

To receive qualified immunity, "an officer need not have actual probable cause but only 'arguable probable cause,' i.e., the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed." *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997).  Officers Smith and Bruce had arguable probable cause that Mr. Lowe was committing the crime of obstruction:  reasonable officers in their positions could have believed that they needed to determine whether Ms. Lowe was hurt inside the house and that Mr.

15

Lowe's refusal to step outside gave rise to probable cause that he was obstructing them from investigating the emergency. Likewise, reasonable officers could have believed that the urgency and gravity of investigating whether Ms. Lowe was in danger created probable cause that exigent circumstances necessitated their entry to the Lowes' home. Lastly, reasonable officers could have believed that Mr. Lowe's refusal to exit the house generated probable cause that his arrest was the only way to ensure that they could enter and locate the source of the emergency.

At the time of this incident, it was not clearly established that, in responding to a 911 call that a man was killing a woman, the Fourth Amendment bars officers from making an in-home warrantless arrest of a man they believe is preventing them from entering the house to investigate a possible homicide. No precedent of which we are aware "squarely governs the case here" to give the officers notice that their conduct was illegal (assuming that it was illegal). *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004). Officers Smith and Bruce are entitled to qualified immunity on Mr. Lowe's unlawful arrest claim. For the foregoing reasons, we affirm the district court's grant of summary judgment to the defendants on this claim, even though we do so on a slightly different ground than the one adopted by the district court. *Bonanni*, 959 F.2d at 1561.

**B.** **Mr. Lowe Has Abandoned Any Discrete Excessive Force Claim, and His Non-Discrete Claim That the Force Used Was Excessive Because the Arrest Was Unlawful Fails As a Matter of Law.**

16

The district court concluded that the use of force by Officers Smith and Bruce did not violate clearly established law. We affirm the district court's rejection of Mr. Lowe's excessive force claim, again on a different ground. *Id.*

"Under this Circuit's law, . . . a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000). The damages for an unlawful arrest include "damages suffered because of the use of force in effecting the arrest." *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995). Even if the initial stop or arrest was lawful, a plaintiff may still allege "a discrete excessive force claim" that the amount of force used to effect that stop or arrest was excessive. *Jackson*, 206 F.3d at 1171. Here, it is unclear from the Lowes' amended complaint whether Mr. Lowe alleges a non-discrete or a discrete excessive force claim.

We need not decipher the amended complaint, however. The Lowes explicitly state in their brief on appeal that they "do not argue that Mr. Lowe was subjected to excessive force per se." Appellants' Br. at 23. Thus Mr. Lowe knowingly has abandoned on appeal any discrete claim he may have made in the district court that the amount of force used was excessive even if the arrest was lawful. Rather, Mr. Lowe makes the non-discrete claim that any force used against him was excessive because his arrest was unlawful. But because we have already

17

determined that Mr. Lowe's arrest was lawful or that a reasonable officer would have thought it was lawful given the clearly established law at the time, this non-discrete claim fails as a matter of law.  *See Bashir*, 445 F.3d at 1331-33.  Officers Smith and Bruce are entitled to summary judgment on Mr. Lowe's excessive force claim.

C.     **The Officers' Entries Into the Lowes' Home and Officers Bruce's and Lykins's Searches Did Not Violate the Lowes' Fourth Amendment Rights To Be Free From Unreasonable Searches and, Even If They Did, These Violations Were Not Clearly Established.**

As with warrantless in-home arrests, warrantless in-home searches require both probable cause and exigent circumstances.  *Holloway*, 290 F.3d at 1337.  Although ordinarily the purpose of a search is to recover evidence of a crime, the purpose of a search in an emergency situation is to "locate victims and . . . ensure [the officers'] safety and that of the public."  *Id.*  "Thus, in an emergency, the probable cause element may be satisfied where officers reasonably believe a person is in danger."  *Id.* at 1338.  In other words, if the police have probable cause to believe that an emergency is going on inside the home, the police may conduct a warrantless search inside the home to locate the source of the emergency.  *See Smith*, 834 F.3d at 1293.  We conclude that the four officers' entries into the front

18

room of the Lowes' home, Officer Bruce's search of the downstairs, and Officer Lykins's search of the upstairs did not run afoul of the Fourth Amendment.[9]

The Supreme Court has long recognized threats to life as the sort of emergency that satisfies the exigent circumstances exception to the search warrant requirement. "[T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *Mincey*, 437 U.S. at 392. Based on the substance of the 911 call, as they understood it, Officers Smith and Bruce had probable cause to believe there could be a person in need of immediate aid inside the Lowes' home, justifying their entry into the downstairs of the home. Officer Bruce's search of the downstairs for victims remained "strictly circumscribed by the exigenc[y]" of investigating a possible homicide, *id.* at 393 (internal quotation marks omitted); the Lowes have not alleged that Officer Bruce opened or searched in compartments where a victim could not reasonably be found. Therefore, in searching the first floor of the Lowes' home, Officer Bruce did not violate the Fourth Amendment's prohibition on unreasonable searches.

---

[9] Although Officers Smith's and Bernichon's entries into the Lowes' home qualify as "searches" under the Fourth Amendment, *see O'Rourke v. Hayes*, 378 F.3d 1201, 1207 (11th Cir. 2004), nothing in the record indicates that they went anywhere other than the front room of the Lowes' home or opened any compartments in it. Therefore, in this section, we determine only whether their limited entries into the front room of the Lowes' home were illegal.

This still leaves the issues of Officer Bernichon's entry and Officer Lykins's entry and search of the upstairs. Our precedent provides that, after a person's Fourth Amendment interest "is invaded legally by an official of the State, the citizen has lost his reasonable expectation of privacy to the extent of the invasion. . . . [A]dditional investigators or officials may therefore enter a citizen's property after one official has already intruded legally." *United States v. Brand*, 556 F.2d 1312, 1317 (5th Cir. 1977).[10] That said, "later officials must confine their intrusion to the scope of the original invasion." *Id.* at 1317 n.9, 1318 (holding that officers' entry into and search of a bedroom exceeded the scope of the emergency, which was confined to the living room). And the "scope of the original invasion" is defined by the "scope of the exigency justifying the original warrantless entry." *United States v. Parr*, 716 F.2d 796, 801, 812-13 (11th Cir. 1983) (holding that a firefighter's search of a sugar bowl exceeded the scope of the emergency, which was to fight the fire and locate its source).

Officers Bernichon's and Lykins's entries into the downstairs of the Lowes' home came within the "scope of the original invasion" that Officers Smith and Bruce had already lawfully made to investigate whether anyone was hurt inside the house. *Brand*, 556 F.2d at 1317 & n.9. Mr. Lowe does not allege that Officers

---

[10] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981 are binding on this Court. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

20

Bernichon and Lykins entered any downstairs area that Officer Bruce had not already searched or that they opened compartments that could not reasonably be expected to contain a person.  Therefore, these officers' entries into the downstairs of the Lowes' home did not violate the Fourth Amendment.

The Lowes argue that Officer Lykins's search of the upstairs exceeded the scope of the exigency that justified Officer Bruce's search of the downstairs. Given the subject of the 911 call—a possible homicide—it is curious that the officers allowed approximately 12 minutes to lapse between handcuffing Mr. Lowe and Officer Lykins initiating the search of the upstairs.

Nevertheless, the specific facts of this case indicate that the exigent circumstances exception to the warrant requirement justified Officer Lykins's search of the upstairs.  During these intervening 12 minutes, Officers Smith, Bruce, and Bernichon attended to Mr. Lowe; Officer Bruce argued with him over what had happened and read him his *Miranda* warnings; once Officer Lykins arrived, he and Officer Bernichon escorted Mr. Lowe outside; and Officers Smith, Bruce, and Lykins discussed amongst themselves and with N.L. the circumstances of the 911 call and the altercation with Mr. Lowe.

The officers may have displayed a lack of diligence in letting 12 minutes pass before Officer Lykins checked the upstairs.  Yet we cannot say that they acted unreasonably in attending to Mr. Lowe or inquiring with N.L. about the

21

circumstances of the 911 call and the sequence of events that resulted in Mr. Lowe getting Tased and arrested. Based on the information Officer Lykins had gleaned from speaking with Officers Smith, Bruce, and N.L., Officer Lykins had probable cause to believe that there might be a person hurt upstairs. The Lowes do not allege that Officer Lykins searched in places that could not be expected to contain a person. For these reasons, Officer Lykins's search did not violate the Fourth Amendment. *See Smith*, 834 F.3d at 1293; *Holloway*, 290 F.3d at 1337-38.[11]

Even assuming Officers Smith's, Bruce's, Bernichon's, and Lykins's entries and Officers Bruce's and Lykins's searches violated the Fourth Amendment, the officers are entitled to qualified immunity because such violations were not clearly established at the time of the incident. Each officer had arguable probable cause to believe there was an ongoing emergency—a possible homicide—that required them to enter the Lowes' home and search it for victims. *Montoute*, 114 F.3d at 184. Stated in the negative, the need to investigate the source of the 911 call meant that the "contours" of the Lowes' rights not to have their home searched were not

---

[11] Officer Lykins relies on *Montanez v. Carvajal*, in which we held that officers' subsequent entries into a home "were justified even though the exigency that underlay the first two searches had almost surely passed." 889 F.3d 1202, 1212 (11th Cir. 2018). Yet neither *Montanez* nor *Brand*, the case *Montanez* cites, stand for the proposition that an officer arriving after the exigency has already passed may search in rooms that earlier-arriving officers had *not* already searched when the exigency was ongoing. In *Brand*, our predecessor court held that officers' entry into and search of a bedroom violated the Fourth Amendment because the exigency was limited to the living room. 556 F.2d at 1318. No officer had searched the upstairs of the Lowes' home before Officer Lykins did, so he cannot rely on the "subsequent entries" justification from *Montanez* and *Brand* to justify his search. *Montanez*, 889 F.3d at 1212.

22

"sufficiently clear" such that "a reasonable official would understand that what he [wa]s doing violate[d] th[ose] right[s]." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). All four officers are entitled to qualified immunity—and summary judgment—on the Lowes' illegal search claim.

## D.    We Affirm the Dismissal of Mr. Lowe's State Law Claims Without Prejudice.

Because we affirm the grant of summary judgment to the defendants on the federal claims, we also conclude that it was not an abuse of discretion for the district court to decline to exercise supplemental jurisdiction over Mr. Lowe's state law false imprisonment and battery claims and to dismiss those claims without prejudice. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). We affirm the district court's nonprejudicial dismissal of those claims. *See Starship Enters. of Atlanta, Inc. v. Coweta Cty.*, 708 F.3d 1243, 1252 (11th Cir. 2013).

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment to the defendants on the federal claims and dismissal of the state law claims without prejudice.

**AFFIRMED.**